Douglas KIRK *v.* STATE of Arkansas

CA CR 91-212 832 S.W.2d 271

Court of Appeals of Arkansas
Division I
Opinion delivered May 27, 1992

*Robert Meurer*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Teena L. White*, Asst. Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. Douglas Kirk was injured in a one vehicle accident in White County. Kirk was rendered unconscious and taken by ambulance to the hospital; his car was rendered inoperable.

White County Deputy Ed Meharg arrived at the accident scene and began looking through the car for registration papers. In the process he found a black box between the console and the driver's seat. When he opened the box he found several small plastic bags containing white powder. The powder was later identified as methamphetamine and Kirk was charged with its possession. When the trial judge denied Kirk's motion to suppress the evidence, Kirk entered a conditional plea of guilty under Rule 24.3(b) of the Arkansas Rules of Criminal Procedure, reserving his right to appeal. The sole issue before us is whether the search of appellant's car violated the Fourth Amendment to the United States Constitution. We conclude that it did and that the case must be reversed.

The State's only witness at the suppression hearing was Deputy Meharg. He testified that the car was "totaled out" and was located on private property. He said that he did not think that there was a license plate on the car and that, as best he could remember, there was some reason why he was trying to find out who the owner of the automobile was. He knew that Kirk was the

driver because emergency personnel had given him Kirk's driver's license. He thought that Kirk may have been unconscious.

Deputy Meharg testified that the car was filled with "bingo cards or papers." He testified that he opened the black box in the front seat because he thought there might be some identifying papers in it. He said that he had no reason to believe that the car was stolen, but that he was "just curious who it belonged to." There was no indication that the car was obstructing a public way, and it had not been impounded.

The State concedes that the officer's actions constituted a "search" within the meaning of the Fourth Amendment. All searches conducted without a valid warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant.[1] *Johnson* v. *State*, 291 Ark. 260, 724 S.W.2d 160 (1987) *cert. denied*, 484 U.S. 830. While the interior of an automobile is not subject to the same expectation of privacy that exists with respect to one's home, a car's interior, as a whole, is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police. *New York* v. *Class*, 475 U.S. 106 (1986). A citizen does not surrender all the protections of the Fourth Amendment by entering an automobile. *See Delaware* v. *Prouse*, 440 U.S. 648 (1979). When a search is made without a warrant, the burden of proof rests on those who seek to justify it. *Dominguez* v. *State*, 290 Ark. 428, 720 S.W.2d 703 (1986).

The State first argues that the defendant abandoned his automobile and thus relinquished any reasonable expectation of privacy. *See Wilson* v. *State*, 297 Ark. 568, 765 S.W.2d 1 (1989). One who has no reasonable expectation of privacy lacks standing to complain of an illegal search. *Rawlings* v. *Kentucky*, 448 U.S. 98 (1980).

Abandonment, in this sense, is primarily a matter of intent. *United States* v. *Colbert*, 474 F.2d 174 (5th Cir. 1973);

---

[1] It has been said that the warrant requirement has become so riddled with exceptions that it is basically unrecognizable. *California* v. *Acevedo*, 500 U.S. ___, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991) (Scalia, J., concurring).

*United States* v. *Manning*, 440 F.2d 1105 (5th Cir. 1971) *cert. denied*, 404 U.S. 837.

> The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had *voluntarily* discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*Wilson* v. *State, supra* (quoting *U.S.* v. *Colbert*) (emphasis added); *State* v. *Tucker*, 268 Ark. 427, 597 S.W.2d 584 (1980). In the case at bar the defendant was removed from his vehicle while unconscious and taken to the hospital. There was no evidence of intent to abandon. It cannot be said that he "voluntarily" left his car behind. This is also not a case of apparent abandonment as in *Lipovich* v. *State*, 265 Ark. 55, 576 S.W.2d 720 (1979); here, the officer was aware of the facts regarding the vehicle.

The State next contends that the intrusion into the vehicle here was pursuant to the "community caretaking functions" of the police and that the search was in the nature of an inventory. The State relies in large part on *Cady* v. *Dombrowski*, 413 U.S. 433 (1973), and *South Dakota* v. *Opperman*, 428 U.S. 364 (1976). If we assume that the search was in the nature of an inventory search,[2] it is governed by the principle stated in *Florida* v. *Wells*, 495 U.S. 1 (1990). In that case, Wells was arrested and his car was impounded. In the subsequent inventory search, officers found a locked suitcase in the trunk of the car. The suitcase was opened and found to contain marijuana. There was no evidence of any police department policy on the opening of closed containers found in the course of an inventory search. Chief Justice Rehnquist, speaking for the Court, said:

> Our view that standardized criteria, or established routine, must regulate the opening of containers found during

---

[2] *But see State* v. *Hill*, 115 N.J. 169, 557 A.2d 322 (1989), *Caplan* v. *State*, 531 So.2d 88 (Fla. 1988), and *State* v. *Teeter*, 249 Kan. 548, 819 P.2d 651 (1991). (An inventory search in an attempt to discover ownership papers could not be upheld when the car had not been legally impounded.)

inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. . . .

. . . .

. . . We hold that absent such a policy the instant search was not sufficiently regulated to satisfy the Fourth Amendment and that the marijuana which was found in the suitcase, therefore, was properly suppressed by the Supreme Court of Florida. [Citations omitted.]

Both *Cady* v. *Dombrowski* and *South Dakota* v. *Opperman* are distinguishable. In both cases the police had lawfully impounded an automobile and the subsequent inventory was pursuant to standard police procedures. The opening of closed containers in an inventory search is permissible only if officers are following standard police procedures. *See Colorado* v. *Bertine*, 479 U.S. 367 (1987). It is apparent that the burden rests on the State to show what the standard policy is. *See Florida* v. *Wells, supra; People* v. *Lear*, 217 Ill. App. 3d 712, 577 N.E.2d 826 (1991).

The case at bar shows factual similarity to *Asher* v. *State*, 303 Ark. 202, 795 S.W.2d 350 (1990) *cert. denied*, 111 S. Ct. 757. In that case, however, there apparently was no issue raised relating to the opening of closed containers and the vehicle had been impounded.

It could also be argued that the situation is similar to the facts in *New York* v. *Class*, 475 U.S. 106 (1986). There the defendant was stopped for speeding. While the driver was outside the car talking to one officer, another officer opened the car door to look for a vehicle identification number. In doing so he moved some papers obscuring the dashboard where the number was located and saw a gun. The driver was arrested on a firearms violation.

The Court held that the intrusion by the officer was a search, but that in balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the governmental interests alleged to justify the intrusion, the Court concluded that the search was permissible. Significantly, the Court in *Class* noted:

The officer did not root about the interior of the respondent's automobile before proceeding to examine the VIN. He did not reach into any compartments or open any containers. He did not even intrude into the interior at all until after he had checked the door jamb for the VIN. When he did intrude, the officer simply reached directly for the unprotected space where the VIN was located to move the offending papers. We hold that this search was sufficiently unintrusive to be constitutionally permissible in light of the lack of a reasonable expectation of privacy in the VIN and the fact that the officers observed respondent commit two traffic violations.

475 U.S. at 118-19.

We also recognize that the decision in *Class* was based, in part, on the fact that federal law requires that the VIN be placed in the plain view of someone outside the vehicle. 745 U.S. at 111-12.

 We conclude that in the absence of any evidence as to the standard policy regulating the opening of closed containers, the State's contention that the search can be justified under the "community caretaking" or inventory search exception to the warrant requirement cannot be sustained under *Florida* v. *Wells*. We also conclude that the search here cannot be sustained under the exception to the warrant requirement established in *New York* v. *Class*. Finally, just as there is no murder scene exception to the warrant requirement, *Mincey* v. *Arizona*, 437 U.S. 385 (1978), we know of no exception permitting a general search of a wrecked car for evidence of ownership, at least when the identity of the driver is known.[3]

 The State's contention that the search can be justified under the "plain view" doctrine is without merit. While the container here may have been in plain view from outside the vehicle, its contents clearly were not. *See, e.g., State* v. *Risinger*,

---

[3] *Paschall* v. *State*, 523 N.E.2d 1359 (Ind. 1988), and *People* v. *Russell*, 174 Mich. App. 357, 435 N.W.2d 487 (1989), both offer some support for the State's position. Those cases, however, were decided prior to the Supreme Court's decision in *Florida* v. *Wells*, which we are clearly bound to follow.

297 Ark. 405, 762 S.W.2d 787 (1989); *see also Arizona v. Hicks*, 480 U.S. 321 (1987).

Reversed and remanded.

COOPER and ROGERS, JJ., agree.