Billy Edward WELCH *v.* STATE of Arkansas

CR 97-378 955 S.W.2d 181

Supreme Court of Arkansas
Opinion delivered October 9, 1997

*Norman Mark Klappenbach*, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Billy Edward Welch was convicted of possession of a controlled substance with intent to deliver, felon in possession of a firearm, simultaneous possession of a controlled substance and a firearm, and possession of drug paraphernalia. He was sentenced as a habitual offender to two terms of life in prison for the possession–with–intent charge and the simultaneous possession charge, six years for being a felon in possession of a firearm, and ten years for the drug paraphernalia. All of Welch's convictions arise out of a traffic stop and the subsequent impoundment and search of his vehicle. On appeal, he raises the issues of sufficiency of the evidence, speedy trial, and suppression of the evidence seized from his vehicle. We affirm.

On the evening of July 28, 1995, the Dallas County Sheriff's Department conducted a safety inspection at the intersection of State Highways 8 and 9 in Dallas County. Deputy sheriffs stopped all vehicles and checked the drivers' licenses and other documentation relating to ownership of the vehicle and insurance. Welch came upon the deputies while driving his Chevrolet El Camino

with a friend. He was approached by Deputy Bill Still, an Auxiliary Deputy Sheriff for Dallas County.

Deputy Still later testified that Welch was unable to provide a legible driver's license, proof of insurance, or proof of ownership of the vehicle. Deputy Still reported this situation to his supervisor on the scene, Deputy Sheriff Kenneth Seale. The deputies then checked Welch's license plate and found that it was registered to another vehicle. Both deputies also testified at the suppression hearing that the initial computer report on Welch indicated that there was a warrant out for his arrest for failure to appear in court in a different county.

Welch was asked if he had any weapons, drugs, or alcohol in his vehicle. According to the deputies, he initially denied having any drugs or weapons. Later, however, he surrendered a nine millimeter handgun from behind the seat of his El Camino. The deputies then asked if they could search the vehicle, whereupon Welch became angry and refused to allow them to do a search and insisted that he be allowed to go home. Welch was then arrested for the traffic violations, and his car was impounded.

Before impounding the vehicle, the deputies took an inventory of its contents. At trial, the law enforcement officers, including Auxiliary Deputy Still, Deputy Seale, and Arkansas Game and Fish Wildlife Officer Mike Knoedl, testified about their involvement in the search. Officer Knoedl testified that he occasionally assisted the Dallas County Sheriff's Department in investigations. On this occasion, Deputy Seale asked Officer Knoedl to assist in the search of Welch's vehicle because the El Camino was extremely cluttered. Deputies Still and Seale testified that other law enforcement officers brought them items from the car, and they recorded on a log sheet everything that was found in the vehicle and where it was found. Both of the deputies testified that the purpose of the search was to keep Welch from later claiming that something was missing from his vehicle. Deputy Still also stated that he was searching the vehicle to determine if there were more guns.

While conducting the inventory search, the law enforcement officers found several syringes, a bag containing more than thirty-

three grams of methamphetamine, a set of scales, and several spoons. Most of these items were found in an ammunition box that was located in the bed of the El Camino. The officers also found Welch's proof of insurance and proof of ownership of the vehicle in the ammunition box with the drugs. Prior to trial, Welch moved to have all of the items found in the search suppressed. The motion was denied, and Welch was tried by jury, convicted, and sentenced as set out above.

## I. Sufficiency of the Evidence

We first consider Welch's argument regarding sufficiency of the evidence because the double jeopardy clause precludes a second trial when a judgment of conviction is reversed for insufficiency of the evidence. *King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996); *Jones v. State*, 323 Ark. 655, 916 S.W.2d 736 (1996).

After the State rested its case, the following exchange took place:

> COUNSEL FOR DEFENSE: Your Honor, the State has rested and at this point the defense would move for a directed verdict.
>
> THE COURT: Is that all you've got to say?
>
> COUNSEL FOR DEFENSE: Yes, sir, that's all I'm saying. (The court then gave the State a chance to comment after which the following took place.)
>
> THE COURT: The motion for directed verdict is denied.
>
> COUNSEL FOR DEFENSE: Your Honor, then the defense would now rest and we renew our motion for a directed verdict and I would like to say that the defense is resting without calling the defendant, or a witness, after discussing that with my client and he is in agreement, is that right, Mr. Welch?

The court then denied the renewed motion. At no time did defense counsel state any grounds for his motion, which violates Rule 33.1 of the Arkansas Rules of Criminal Procedure. *See also Dixon v. State*, 327 Ark. 105, 937 S.W.2d 642 (1997); *Smallwood v. State*, 326 Ark. 813, 935 S.W.2d 530 (1996). Thus, the trial

judge had no opportunity to rule on specific grounds with respect to any of the charges. We hold that Welch is procedurally barred from raising this issue on appeal.

## II. Suppression of the Evidence

■ Welch's next point concerns the items seized by the Dallas County Sheriff's Department while conducting a warrant-less search prior to impoundment of his vehicle. When reviewing the denial of a suppression motion, this court makes an independent examination of the evidence based on the totality of the circumstances, and we will not reverse the trial judge's decision unless it is clearly against the preponderance of the evidence. *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997), *reh'g denied*, 327 Ark. 576-A, 940 S.W.2d 440 (1997).

■ We initially examine the general law relating to inventory searches. Inventory or administrative searches are excepted from the requirement of probable cause and a search warrant. *Florida v. Wells*, 495, U.S. 1 (1990). The purpose of an inventory search is to protect the property, the police, and the public. *Id.* The rationale is that police officers can better account for the property if they have an accurate record of what is contained in a vehicle when it is impounded. Moreover, the police and the public are protected by ensuring that the vehicle does not contain explosives or other harmful items. As part of an inventory search, the police are permitted not only to search the vehicle, but also the containers within the vehicle. *Id.* *Colorado v. Bertine*, 479 U.S. 367 (1987); *Snell v. State*, 290 Ark. 503, 721 S.W.2d. 628 (1986), *cert. denied*, 484 U.S. 872 (1987).

■ In order for a search of a properly detained vehicle to fall within the inventory search exception to the search warrant requirement, there must be standard operating procedures established by the law enforcement agency conducting the search. *Florida v. Wells, supra; Colorado v. Bertine, supra; Snell v. State, supra.* The procedures must be followed and the inventory search must not be conducted solely for investigative purposes. *Id.* There is no requirement that the procedures for the inventory search be in writing. *United States v. Lowe*, 9 F.3d 43 (8th Cir. 1993). *See also*

*United States v. Skillern*, 947 F.2d 1268 (5th Cir. 1991), *cert. denied*, 503 U.S. 949 (1992); *Snell v. State, supra.*

 Absent a showing that the true intent of the police officers was to conduct an evidentiary search, the testimony of police officers that they always take inventory of impounded vehicles and that they always search containers is sufficient. *Id.* The fact that police officers have some idea or expectation of what they might find does not invalidate the purpose of the search. Indeed, the police are not required to weigh the individual's privacy interest against the probability of finding hazardous materials before opening a container in the vehicle. *Colorado v. Bertine*, 479 U.S. at 374.

### a. Standard Procedures

Turning to the case at hand, Welch argues that the Dallas County Sheriff's Department did not follow normal procedures for an inventory search because the Department did not have written procedures and the deputy sheriffs could not be specific as to what the procedures were. In *Snell v. State, supra*, this court relied on the *testimony* of law enforcement officers to prove the inventory search, which included opening a container, was standard procedure. Accordingly, we turn to the testimony of the law enforcement officers to determine whether standard operating procedures were in place. Deputy Sheriff Seale testified that he always searches vehicles that are impounded:

> Q. — as far as the Dallas County Sheriff's Department is concerned what does inventory mean?
>
> A. Well, it's part of our policy, as far as I know, that in case, you know, if we impound a vehicle we got everything listed and documented then the subject can't come back later on and say that such-and-such is missing —
>
> . . . .
>
> Q. Okay. Do you — Mr. Seale, have you participated in other inventory searches?
>
> A. I have.

Q. Yes, sir. Is this the — the way y'all did this any different than your normal procedure?

A. No.

. . . .

Q. Now, what were you looking for when you were searching the vehicle?

A. Weren't looking for any certain thing, we was just documenting each and every item that was in the vehicle before we impounded it.

In addition, Game and Fish Officer Knoedl testified at trial:

Q. And is that your standard procedure to open a box like that?

A. Yes, sir.

Q. Who told you to do that, Mike?

A. Well, basically I work under the same procedure that the Game and Fish follows, which we have a written policy that says, "All containers locked, or unlocked, will be searched," you know, "or inventoried when a vehicle is stored."

Q. Okay. Does the Dallas County Sheriff's Office have a written policy like that?

A. Sir, I couldn't say for sure. I know that there is supposed to be a verbal policy. I know from being here seven years and working with the Dallas County Sheriff's Department, that that's normal operating procedure that is done.

■ The trial court cited the Eighth Circuit's decision in *United States v. Lowe, supra,* for the proposition that standard procedures do not have to be in writing and made the following findings in its order:

The Courts have ruled that an inventory search must be based upon standardized procedures to prevent rummaging. The officers testified at the hearing that upon impounding the vehicle it would be taken to the Sheriff's Office so that a written inventory of the contents of the vehicle could be made in accordance

with their policy. They acknowledged that they had not seen a written policy but do this all the time.

> The Courts have not required that for inventory searches to be valid they must be based on written standardized procedures or written standard police policy. These procedures may be written, but established unwritten procedures are also sufficient. The officers in this case were following what they had been trained to do when the vehicle was impounded after a valid arrest, perform an inventory for the protection of the owner, the police and the public.

These findings are a proper statement of the law and the facts. While we have no doubt that written procedures are preferable to oral procedures, neither our caselaw nor federal caselaw requires that the standard policy be in writing for the inventory search to pass constitutional muster. The essential points appear to be that the practice be uniform and that no discretion be left to the police officers to decide the boundaries of the inventory search. *See Colorado v. Bertine, supra.*

■ Welch makes a specific argument that doing an inventory of the ammunition box was clearly violative of the Fourth Amendment. We disagree. Though Game and Fish Officer Mike Knoedl was not a member of the Sheriff's Department, he testified that he knew the department's procedures on opening containers, having worked in conjunction with the Department for seven years. Deputy Kenneth Seale further testified that the inventory search, which would include search of the ammunition box, was according to normal procedure. Thus, there was evidence of a standard policy, unlike the case of *Kirk v. State*, 38 Ark. App. 159, 832 S.W.2d 271 (1992), where the Court of Appeals concluded there was no evidence of a policy regarding closed containers.

■ Certainly, the circumstances surrounding the search were suspicious with no proof of ownership of the vehicle, a warrant outstanding for Welch's arrest, and a weapon in the vehicle. We are further persuaded by the Supreme Court's reasoning in *Colorado v. Bertine, supra*:

> Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police

officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit.

*Bertine*, 479 U.S. at 375, *quoting Illinois v. Lafayette*, 462 U.S. 640, 648 (1983). There was no abuse of discretion by the trial court in refusing to suppress this evidence.

### b. Pretextual Search

Other than the testimony of Deputy Still that he was also looking for guns, there was no evidence that the search was anything other than an inventory search. Deputy Still and Deputy Seale both testified that they were doing an inventory search. The United States Supreme Court has observed that the fact that a police officer is also aware that he might come upon pertinent evidence in the course of an inventory search is not fatal to that search. *Colorado v. Bertine, supra.*

To suppress an inventory search, a defendant must show that the police officers were conducting the inventory search in bad faith for the sole purpose of collecting evidence. *Id. See also South Dakota v. Opperman*, 428 U.S. 364 (1976)(plurality opinion). Here, the trial court did not find that there was an ulterior motive on the part of the Dallas County Sheriff's Department. We decline to superimpose our view of the testimony over that of the trial court's when the law enforcement officers are following standard procedure and in the absence of proof that the sole motivation for the search was to collect evidence. *See Ryan v. State*, 303 Ark. 595, 798 S.W.2d 679 (1990).

### III. Speedy Trial

Welch next claims that the trial court erred because it did not dismiss the charges against him after the time for speedy trial had expired. The State answers that Welch waived his right to a speedy trial because he failed to raise the issue in the trial court.

Welch was arrested on July 28, 1995. The defense requested and was granted a motion for a continuance on August 19, 1996. The attorney requesting the continuance explained that he would

not be ready for trial on that day because Welch failed to attend any of their scheduled meetings and he had not met with the defendant until August 13, 1996. The continuance was granted and time was charged to the defendant. The defense later made a motion to suppress and a hearing was held on November 25, 1996. At the end of the hearing, the court, the prosecutor, and defense counsel attempted to set a trial date, and the following exchange took place:

> THE COURT: Is there really a speedy trial problem? If I remember correctly I think Mr. Welch walked out of this court-room and left and we were trying to resolve this matter and he was gone a good long time, was he not?

> PROSECUTOR: Yes, sir. I would ask, so as to avoid any further problem, I'd ask that we go ahead and try this case this year, depending, of course, on what the Court rules. If the Court rules —

> THE COURT: Well, I'm not going to do anything until I rule on this [suppression] motion —

> PROSECUTOR: Yes, sir.

> THE COURT: — and if you get me that in a week then I will set it and right now I told you I would set it preferably on the 12, that day's open —

> PROSECUTOR: Yes, sir.

> THE COURT: — do either of you have any problem with the 12th?

> DEFENSE COUNSEL: No, sir, that'd just give me time to drive back from St. Louis and rest a day before I try a jury trial.

This is the only time that speedy trial was discussed at the trial court level before the current appeal.

 ██ In criminal cases, even constitutional issues must be presented to the trial court to preserve them for appeal. *Henry v. Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992). A defendant's failure to move for a dismissal of charges for a lack of speedy trial constitutes a waiver of his rights under the rules. *Summers v. State*, 292 Ark. 237, 729 S.W.2d 147 (1987). The defense had plenty of

opportunity to object to the trial date, but instead consented to it even after the trial court referred to a potential speedy-trial problem. The trial court is not required to make the motion for him. This issue has no merit.

### IV. Cumulative Error

For his final point, Welch contends that all of the rulings against him, when considered together, constitute reversible error. In response, the State correctly points out that the cumulative-error argument was not raised to the trial court. This court has specifically held that not only must each of the negative rulings be objected to individually, a defendant must also raise the cumulative-error objection to the trial court and obtain a ruling in order to argue the point on appeal. *Witherspoon v. State*, 319 Ark. 313, 891 S.W.2d. 371 (1995). Because Welch did not raise the cumulative-error objection in the trial court, he is barred from raising it on appeal. *Id.*

The individual objections by Welch and the record on appeal have been reviewed for prejudicial error in accordance with Supreme Court Rule 4-3(h), and none has been found.

Affirmed.