David THOMPSON *v.* STATE of Arkansas

CR 98-76                                          966 S.W.2d 901

Supreme Court of Arkansas
Opinion delivered April 30, 1998

*Linda Scribner,* Public Defender, for appellant.

*Winston Bryant,* Att'y Gen., by: *Brad Newman,* Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellant, David Andrew Thompson, entered a conditional guilty plea to the crimes of possession of a controlled substance and possession of

drug paraphernalia. The sole issue on appeal is whether the trial court erred when it denied Thompson's motion to suppress evidence found during an inventory search of his car. Finding no error, we affirm.

On August 14, 1996, at approximately 10:00 p.m., Officer Walter stopped Thompson's vehicle because the tail lights were not working. Officer Walter cited Thompson for not having a valid driver's license or proof of insurance and issued him a warning for the malfunctioning tail lights. Thompson was not placed under arrest. Officer Walter then attempted to contact two or three of Thompson's friends in an effort to find someone to drive Thompson and his vehicle home. After these efforts proved unsuccessful, Officer Walter informed Thompson that he could not leave the car on the side of the highway because it would create a safety hazard, and the car could be vandalized. Therefore, the car would have to be impounded and its contents inventoried.

Thompson assisted Officer Walter in the inventory of his vehicle. Officer Walter briefly looked in the front seat of the car with his flashlight and did not see "anything obvious" to inventory. Thompson then opened the hatchback of his car, and assisted Officer Walter in the inventory of the items contained in a tool box and a wooden box. As the two men were looking through the wooden box, Thompson asked Officer Walter if he could remove some of the items. Officer Walter responded in the affirmative and advised Thompson that even the items removed from the car would have to be inventoried. Thompson proceeded to remove some books and an eyeglasses case. Officer Walter told Thompson that he would have to look inside the eyeglasses case to inventory the property contained therein and to insure that the case did not contain a small weapon. Thompson handed the eyeglasses case to Office Walter and exclaimed: "I'm busted. Can I bond out tonight?" Officer Walter opened the eyeglasses case and found several plastic bags containing methamphetamine.

Officer Walter immediately placed Thompson under arrest, and secured him in the back seat of the police car. Officer Walter then returned to the vehicle and resumed his search. Officer Walter looked further into the eyeglasses case and discovered drug par-

aphernalia. Officer Walter then found in the wooden box a bong with residue, marijuana, and a razor blade. On the driver's side floorboard, Officer Walter found a small leather purse that contained more drugs and paraphernalia.

Prior to trial, Thompson filed a motion to suppress the evidence seized from his vehicle. During the suppression hearing, Officer Walter explained that it was a standard procedure in his department to impound a vehicle and inventory its contents if the officer could not find someone to drive the vehicle for a person who did not possess a valid license. Officer Walter then testified that it was "normal procedure" to "inventory everything inside the vehicle once the inventory is started," and that he normally inventoried "every possession of a car." The State then introduced the following written policy which is contained in the Benton County Sheriff's "Policy and Procedures" manual:

> *504 Impound*   If you make a physical custody arrest out of a vehicle, you may not leave the vehicle unattended. It is up to the officer's discretion to allow someone else to drive the vehicle (with the owner's permission); however, if this is not done, it must be impounded . . . . When you impound, you will conduct an inventory. This is done for the violators [*sic*] protection as well as your own and the department's. You will inventory all items in the vehicle, including locked or unlocked containers.

The trial court concluded that Officer Walter was credible, and that he reasonably decided to impound and inventory Thompson's vehicle pursuant to the written policy which passed constitutional muster. Accordingly, the court denied Thompson's motion to suppress. Thompson then entered a conditional guilty plea to the crimes of possession of a controlled substance and possession of drug paraphernalia.

In an unpublished opinion, the Court of Appeals reversed and remanded Thompson's conviction because it concluded that the trial court should have suppressed the evidence seized from the Thompson's car. *Thompson v. State*, CACR97-726 (Ark. Ct. App. Jan. 21, 1998). We granted the State's petition for review, and consider this case as though it were originally filed in this court. *Frette v. City of Springdale*, 331 Ark. 103, 959

S.W.2d 734 (1998); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998).

The sole issue on appeal is whether the trial court erred when it denied Thompson's motion to suppress the evidence seized from his car. When reviewing a trial court's denial of a motion to suppress, we make an independent determination based on the totality of the circumstances and reverse only if the court's ruling is clearly against the preponderance of the evidence. *Frette v. City of Springdale, supra*; *Travis v. State, supra*. In making this determination, we view the evidence in the light most favorable to the State, as the appellee. *Id.*

On appeal, neither party contests the legality of the traffic stop. Instead, Thompson argues that Officer Walter had no legal basis for performing the inventory search, or, in the alternative, that he exceeded the scope of a permissible inventory search when he looked inside the eyeglasses case. We find no merit to these arguments.

It is well settled that police officers may conduct a warrantless inventory search of a vehicle that is being impounded in order to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367 (1987); *see also Welch v. State*, 330 Ark. 158, 955 S.W.2d 181 (1997). An inventory search, however, may not be used by the police as a guise for "general rummaging" for incriminating evidence. *Florida v. Wells*, 495 U.S. 1 (1990); *Welch v. State, supra*. Hence, the police may impound a vehicle and inventory its contents only if the actions are taken in good faith and in accordance with standard police procedures or policies. *See Colorado v. Bertine, supra*; *Florida v. Wells, supra*; *Welch v. State, supra*. In *Welch v. State, supra*, we clarified that these standard procedures do not have to be in writing, and that they may be established by an officer's testimony during a suppression hearing. In accordance with these principles, we have promulgated Ark. R. Crim. P. 12.6, which states that:

> A vehicle impounded in consequence of an arrest, or retained in official custody *for other good cause*, may be searched at such times

and *to such extent as is reasonably necessary* for safekeeping of the vehicle and its contents.

(Emphasis added.)

## I.  No Arrest

■ ■    First, Thompson argues that Officer Walter did not have the authority to perform an inventory search because Benton County Policy 504 refers only to inventories of vehicles that are impounded pursuant to an arrest. However, Ark. R. Crim. P. 12.6, which is broader than Policy 504, allows an officer to impound a vehicle and inventory its contents for "any good reason." Moreover, our case law establishes that it is permissible for an officer to impound and inventory a vehicle when the driver is physically unable to drive the car, and leaving it on the side of the road would create a safety hazard. *Asher v. State*, 303 Ark. 202, 795 S.W.2d 350 (1990); *Kirk v. State*, 38 Ark. App. 159, 832 S.W.2d 271 (1992). The only difference between the case at hand, and *Asher* and *Kirk* is that Thompson was legally, not physically, "unable" to drive his car because he did not have a valid driver's license. Finally, Officer Walter testified at the suppression hearing that it was a standard practice in his department to impound and inventory vehicles under such circumstances. For these reasons, we hold that Officer Walter was justified in impounding Thompson's vehicle and completing an inventory of its contents.

## II.  Opening Closed Containers

■    The next issue is whether Officer Walter exceeded the bounds of a permissible inventory search when he opened Thompson's eyeglasses case. In *Florida v. Wells*, 495 U.S. 1 (1990), the United States Supreme Court held that the police may open containers during an inventory search if the department has a standard procedure allowing such conduct. In accordance with *Florida v. Wells, supra*, the Arkansas courts have consistently held that an officer may open a closed container during an inventory search when there is some evidence that the officer did so pursuant to a standard policy. *Welch v. State*, 330 Ark. 158, 955 S.W.2d 181

(1997); *Snell v. State,* 290 Ark. 503, 721 S.W.2d 628 (1986); *Kirk v. State,* 38 Ark. App. 159, 832 S.W.2d 271 (1992); *Folly v. State,* 28 Ark. App. 98, 771 S.W.2d 306 (1989).

As previously mentioned, Policy 504 declares that: "You will inventory all items in the vehicle, including locked or unlocked containers." By referring to locked and unlocked containers, it is clear that this standard policy requires officers to open the containers instead of recording the unopened containers as a unit. Because Officer Walter was acting in accordance with a standard police procedure when he opened the eyeglasses case, and there was no evidence of bad faith, we hold that he did not exceed the permissible bounds of an inventory search when he opened the closed container.

### III. Items Removed from the Car

This conclusion, however, does not end our analysis because Thompson further argues that once he removed the eyeglasses case from the vehicle, it was no longer subject to being inventoried. We disagree. As previously explained, an inventory search is conducted for the dual purpose of protecting the owner's property and the police from false claims of theft or vandalism. *See Colorado v. Bertine, supra; Welch v. State, supra.* Accordingly, Ark. R. Crim. P. 12.6 provides that an officer may conduct the inventory to the extent "reasonably necessary for safekeeping of the vehicle and its contents," and Policy 504 declares that officers "will inventory all items in the vehicle."

In the case before us today, Officer Walter was in the midst of the inventory and exercised some dominion and control over the eyeglasses case before he allowed Thompson to remove it from the wooden box located inside the hatchback area. Under such circumstances, we find it reasonable that Officer Walter would need to record the contents of the case to protect himself from a possible claim that he removed, damaged, or destroyed the contents before he handed it over to Thompson. Moreover, Officer Walter's actions were in accordance with the standard police procedure of inventorying all items found in the vehicle. Based on the limited facts of this case, we hold that Officer Walter

did not violate Thompson's Fourth Amendment rights when he opened the eyeglasses case.

■ Even if we had concluded otherwise, Thompson's convictions could have been affirmed pursuant to the inevitable discovery rule which provides that suppressed evidence is admissible if the State proves by a preponderance of the evidence that the police would have inevitably discovered the evidence by lawful means. *Nix v. Williams*, 467 U.S 431 (1984); *Brunson v. State*, 296 Ark. 220, 753 S.W.2d 859 (1988); *Mitchell v. State*, 294 Ark. 264, 742 S.W.2d 895 (1988). We think that the State sustained its burden in this case as it is apparent that Officer Walter would have inevitably and lawfully discovered the other drugs and paraphernalia in the wooden box and the leather case during his inventory search even if he had never opened Thompson's eyeglasses case.

For the forgoing reasons, the trial court's ruling is affirmed.