Amelia EVANS *v.* STATE of Arkansas

CA CR 98-457 987 S.W.2d 741

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered March 3, 1999

*Gregory E. Bryant,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Vada Berger,* Asst. Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. The Poinsett County Circuit Court denied appellant Amelia Evans's motion to suppress the results of an officer's warrantless search of her

purse. Appellant then entered a conditional plea of guilty to possession of a controlled substance, methamphetamine, pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal Procedure. On appeal, she argues that the trial court erred by denying her motion to suppress. We agree, and therefore reverse and remand this case.

■ When we review a ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances, viewing the evidence in the light most favorable to the State. *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997); *Reyes v. State*, 329 Ark. 539, 954 S.W.2d 199 (1997). We reverse only if the ruling is clearly against the preponderance of the evidence. *Wofford, supra; Reyes, supra.*

At 7:30 a.m. on July 9, 1996, Trooper Darwin Adams of the Arkansas State Police received a dispatch that there was a one-car accident on Highway 63 north of Marked Tree. When Trooper Adams arrived on the scene, ambulance personnel were already helping appellant out of her car, which was on its side. He testified that appellant was screaming incoherently and appeared to be suffering from severe injuries.

Because Trooper Adams was unable to speak to appellant, he looked inside her car for something to help in determining her identity. The trooper testified that he saw a purse with a green wallet sitting on top of it on the driver's side floorboard. He opened the wallet and discovered hypodermic needles, a black container with what appeared to be methamphetamine inside, and a clear plastic bag containing a brown powdery substance. The wallet did not contain any identification; however, he discovered a second wallet containing the appellant's driver's license. After learning her identity, he gave appellant's purse and its contents to the ambulance personnel. At the hospital, a nurse discovered the contraband in appellant's purse and gave it to the officer.

Trooper Adams testified that when investigating an accident, he has been trained to first assure the safety of the driver, and then to establish the driver's identity. He explained that he searched appellant's purse to complete his investigation of the accident; he

knew that the ambulance personnel were administering aid to appellant. Trooper Adams testified that he could have called in the car license number to the dispatcher, which would have produced a current and valid registration; however, he testified that he did not do so in this case. He also testified that he did not inventory the vehicle.

Relying on *Kirk v. State*, 38 Ark. App. 159, 832 S.W.2d 271 (1992), appellant argues that the trial court erred by denying her motion to suppress. The State responds that the search can be justified under the exigent circumstances present: appellant was injured, and the officer's search was necessary to determine appellant's identity for the purpose of rendering medical treatment and notifying her relatives. In the alternative, the State argues that the officer's search was reasonable in light of his legal duty to investigate and report on all accidents occurring on the state's highway system.

■ The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. *U.S. Const. amend. IV.* When police officers conduct a search without a warrant, we begin our review with the basic premise that a warrantless search is unauthorized. *Reyes, supra.* All searches conducted without a valid warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. *Kirk, supra.* When a search is made without a warrant, the burden of proof rests on those who seek to justify it. *Id.*

■ Here, appellant objects to Trooper Adams's warrantless search of her purse. "The purpose of a purse or handbag is to carry personal things. An individual's expectation of privacy in a purse is probably greater than in any other property except the clothing worn by a person." *State v. Newman*, 637 P.2d 143, 146 (Or. 1981); *see also People v. Wright*, 804 P.2d 866 (Colo. 1991)(noting that the contents of a purse or wallet are of an extremely personal nature, the warrantless search of which can be justified only under one of the narrowly defined exceptions to the warrant requirement). Thus, unless Trooper Adams's warrantless

search of appellant's purse and its contents falls within one of the exceptions to the warrant requirement, appellant's motion to suppress should have been granted. *See Kirk, supra.*

We are persuaded that the warrantless search of appellant's purse cannot be justified under the exceptions to the warrant requirement argued by the State. We held in *Kirk v. State, supra,* that a deputy sheriff who investigated a one-vehicle accident in which the driver-appellant (Kirk) was rendered unconscious violated that appellant's right under the Fourth Amendment when the deputy opened a closed black box found in the front seat in what he termed was a search for papers that might have identified the driver. In *Kirk,* we rejected the State's argument that intrusion into the interior of the wrecked vehicle and the eventual opening of the closed black box was pursuant to the "community caretaking functions" of the State so that the search was in the nature of an inventory. We rejected that argument because there was no proof that the deputy was following standard police procedures regulating the opening of closed containers. Although the "community caretaking" rationale asserted in *Kirk* is not made in this case, Trooper Adams's explanation for opening and searching appellant's purse at the accident scene violated the same Fourth Amendment interests that were addressed in *Kirk.*

The reasoning of the Supreme Court of Colorado in *People v. Wright, supra,* is especially instructive. In that case, the defendant was involved in a two-car accident. An ambulance and paramedics were at the accident site when the officer arrived; as they administered aid to the defendant, one of the paramedics handed the officer the defendant's purse. The officer put the purse in his vehicle without opening it. *Wright,* 804 P.2d 867-68. After the defendant was taken by ambulance to a hospital, the officer completed his investigation and determined that the defendant was not at fault and would not be charged with any traffic violation. He took the defendant's purse to the hospital, and was informed that the defendant would be in an x-ray room for some time. Rather than attempting to contact the defendant, he went into a break room and searched the defendant's purse.

He testified that he was looking for the defendant's license and other documents in order to complete his accident report. He found marijuana, methamphetamine pills, and drug paraphernalia. He then found the defendant's driver's license. After the defendant came out of the x-ray room approximately thirty minutes later, the officer informed her of the materials seized from her purse. *Id.* at 868.

■ The State in *Wright* attempted to justify the search based upon the "medical emergency exception."

> The medical emergency exception will support a warrantless search of a person's purse or wallet when the person is found in an unconscious or semi-conscious condition and the purpose of the search is to discover evidence of identity and other information that might enhance the prospect of administering appropriate medical assistance to the person.

*Wright*, 804 P.2d at 869 (citations omitted); *cf. Wofford, supra* (noting that, under the "emergency exception," a warrantless entry may be upheld if the intruding officer had "reasonable cause" to believe that someone inside a home was "in imminent danger of death or serious bodily harm"). The Supreme Court of Colorado rejected this argument. It observed that the officer was not confronted with a situation that posed a threat to the life or safety of the defendant. The defendant was not seriously injured, was conscious and receiving treatment, and was able to disclose information that might be used in her diagnosis and treatment. Further, the Court noted that the officer's purpose in searching the defendant's purse was not to obtain information that might be used in treating the defendant; rather, he was attempting to obtain her driver's license and other information for inclusion in his investigative report. *Wright*, 804 P.2d at 870.

■ The State also attempted to justify the officer's search based upon his "administrative duty to complete a traffic accident report. . . ." *Id.* at 870. While acknowledging the possibility that such a search may be justified, the Supreme Court of Colorado cautioned that "[s]uch a search, however, must be limited to those situations in which there is no reasonable alternative avail-

able to the officer. Only in this way can the general proscription against warrantless searches be given its intended effect." *Id.* at 870-71. The court noted several alternatives available to the officer: he could have given the purse to a nurse, and asked her to take it to the defendant so that the defendant could retrieve her driver's license for him; he could have asked to visit with the defendant in the x-ray room; or he could have sought the information at a later date. "Simply stated, the officer was not confronted with a situation in which there was no other reasonable alternative other than to search the defendant's purse for the information necessary for a completed report." *Id.* at 871.

■ In the case before us, the State's argument that Trooper Adams was seeking appellant's identity for the purpose of administering medical treatment is not supported by the testimony. Ambulance personnel were already on the scene of the accident when he arrived; they were administering aid to the appellant. Moreover, Trooper Adams testified that his purpose in searching for appellant's driver's license was to complete his investigative report. Given this testimony, the warrantless search cannot be justified as an attempt to secure information in order to provide medical treatment to the appellant. *Cf. Wofford*, 330 Ark. at 20-21, 952 S.W.2d at 652-53 (noting that an emergency may cease, thereby removing any justification for a warrantless entry into a home).

■ Likewise, Trooper Adams's search cannot be justified as an attempt to secure information for his required investigative report. The car's license number was available to Trooper Adams; he testified that calling this number in to his dispatcher would have produced appellant's name and address without looking in her purse. Other alternatives were available to Trooper Adams: he could have accompanied appellant to the hospital, and sought information from her there; or, he could have sought this infor-

mation from a nurse or other medical personnel. *Cf. Wright, supra* (noting reasonable alternatives to a search of a defendant's purse).[1]

 The State does not contend that the contraband would have been inevitably discovered by Trooper Adams at the hospital, but argues that his search of appellant's purse at the accident scene was lawful. For reasons already discussed, that argument is unpersuasive. And, although the trial court concluded that discovery of the contraband was inadvertent, that conclusion cannot be sustained given the plain evidence that the contraband was discovered only after Trooper Adams removed appellant's purse from her vehicle and opened it. The contraband was not in plain view so that Adams could inadvertently see it; it was in a wallet, a place Adams had no lawful reason to look when he opened the wallet. Even if we accept the argument that appellant's purse and wallet were in plain view when Adams looked inside her vehicle, the contents of the closed wallet were not.

The State has not met its burden of justifying Trooper Adams's warrantless search of the appellant's purse. The trial court's ruling is clearly against the preponderance of the evidence; based on the totality of the circumstances appellant's motion to suppress should have been granted.

Reversed and remanded.

HART, JENNINGS, BIRD, ROAF, and MEADS, JJ., agree.

---

[1] The State cites *Wagner v. Hedrick*, 383 S.E.2d (W. Va. 1989) in support of its second argument to justify the warrantless search. However, in upholding the warrantless search of a defendant's pants pockets for identification, the Supreme Court of Appeals of West Virginia noted that the officer first tried to obtain the defendant's identification information "through other less intrusive measures before he removed [the defendant's] pants from the basket underneath his [hospital] bed . . . ." *Wagner*, 383 S.E.2d at 292.