Cite as 2020 Ark. App. 557

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CR–20–239

| | | |
|---|---|---|
| CLIFTON LAMBERT | | **Opinion Delivered** December 9, 2020 |
| | APPELLANT | |
| V. | | APPEAL FROM THE MONTGOMERY COUNTY CIRCUIT COURT [NO. 49CR-19-53] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE JERRY RYAN, JUDGE |
| | | AFFIRMED |

## BRANDON J. HARRISON, Judge

In October 2018, officers Frank Gibson and Terry Ford knocked on Clifton Lambert's front door pursuant to an arrest warrant and "heard a little noise just to the right of the door" while waiting for Lambert to answer, which he did after approximately fifteen to twenty seconds. Once inside the house, the officers saw in plain view a white substance in plastic baggies that was later identified by a laboratory as methamphetamine. The contraband was spotted on the floor next to a television stand. In addition, a small Altoids tin, with magnets on the back of it, had apparently fallen to the floor, opened, and was therefore in view of law enforcement. The tin contained more baggies of suspected methamphetamine. Finally, numerous baggies rolled together with duct tape were in plain view on a desk by the front window. Lambert was arrested and charged with possession of methamphetamine with purpose to deliver and possession of drug paraphernalia.

A jury trial was convened in due course, and during it, the State called Officer Gibson, who testified during the State's case-in-chief that Lambert had claimed at the scene that the drugs were not his and that he "just kind of rambled about some other things." When the prosecutor asked, "Was anyone else in the residence at the time of your search?" Officer Gibson replied, "Just Mr. Lambert, Officer Ford, and myself."

Lambert was convicted by the jury of possessing methamphetamine.[1] On the jury's recommendation, the court sentenced Lambert to thirty years (as a habitual offender) and assessed a $10,000 fine. Lambert appeals the conviction.

## I.

## A.

Lambert challenges whether the State's evidence against him was enough to support the conviction. Lambert specifically argues that the State failed to link him to the methamphetamine that law enforcement found in plain view inside the jointly occupied premises but not on his person. Therefore, Lambert's main point on appeal is that that he did not constructively possess the contraband, which is the State's theory of the case. But an actual-possession case is not the same as a constructive-possession case. This means that Lambert's motion for directed verdict at trial should have apprised the circuit court of the evidentiary deficiency that he now raises for the first time: that the State did not link

---

[1]Lambert was charged with possessing methamphetamine with the purpose of delivering it, but the jury convicted him on the lesser-included offense of possessing methamphetamine. The circuit court allowed the paraphernalia charge to be severed from the case, so possession with purpose to deliver was the only criminal offense tried to the jury in the case before us.

Lambert to the contraband that was not found on his person, that the contraband was not his (according to his statement at the scene), and that the contraband was found while he lived in what he now says for the first time on appeal was a jointly occupied dwelling.[2]

Lambert did not preserve this sufficiency issue for appellate review because he did not make a proper motion for directed verdict to the circuit court. Arkansas Rule of Criminal Procedure 33.1 requires that a motion for directed verdict in a criminal case

> must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

Ark. R. Crim. P. 33.1(c) (2019).

Lambert's motion for a directed verdict was as follows:

> The defense moves for a directed verdict. The State has failed to present sufficient evidence without speculation or conjecture to arrive at the conclusion that Mr. Lambert either possessed methamphetamine, possessed between 2 and 10 grams[.]

The caselaw has for years recognized that a constructive-possession case is different from a case in which contraband is found on someone's person, for example. The main difference between the two is that an alleged actual possession of contraband requires that the State establish direct physical control over the contraband. Constructive possession, on the other hand, may be established when a person, although not in actual possession of the

---

[2]The investigation report that Lambert cites in his brief as evidence that the house was jointly occupied was not offered as evidence in this case or otherwise recognized by the court as substantive evidence. Nor was the concept of "joint occupancy" and why it mattered ever raised in the circuit court. These facts also support our holding.

3

contraband, has the right to control it and intends to do so—either directly or through one or more persons. *Holloway v. State*, 293 Ark. 438, 444, 738 S.W.2d 796, 800 (1987).

For example, in *Conley v. State*, the defendant's motion for a directed verdict was that "the State never proved Conley had the marijuana in his possession when they found it." 2011 Ark. App. 597, at 6, 385 S.W.3d 875, 878. We held that the motion was too general to preserve an argument against a constructive-possession theory of the case. One of the missing components to Conley's motion was that it omitted an argument or reference to the "additional linking factor" argument that he later made on appeal. *Id.* Another example is *Cooley v. State*, 2013 Ark. App. 580, which involved the constructive possession of firearms and drugs that were found in the curtilage of a jointly occupied house. The motion there was that the "State has failed to make a prima facie case that any of the drugs or guns were ever in possession of my client at the time," which was not specific enough to preserve the argument that the State failed to sufficiently establish a constructive possession. *Id.* at 6.

Other inadequate examples of motions for directed verdicts in constructive-possession cases include the following:

- "I don't believe that the State demonstrated or showed or met their burden in regard to the gun and that [McKinney] in any way possessed a firearm. Therefore, a jury could not conclude that he could be guilty of possession of a firearm." *McKinney v. State*, 2018 Ark. App. 10, at 4, 538 S.W.3d 216, 219.

- "Your Honor, the State has rested and at this point the defense would move for a directed verdict." *Welch v. State*, 330 Ark. 158, 163, 955 S.W.2d 181, 183 (1997).

- The "State had failed to make a 'prima facie case' for possession." *Jones v. State*, 2019 Ark. App. 219, at 3.

4

- "Your honor, the State has rested and the Defense would move for a directed verdict on all counts on the grounds of insufficient evidence." *Dixon v. State*, 327 Ark. 105, 109, 937 S.W.2d 642, 644 (1997).

Contrast these lapses with *Garner v. State*, 2020 Ark. App. 101, 594 S.W.3d 145. While Garner did not state the words "constructive possession" or "jointly occupied premises" in the circuit court, he did argue specific facts in his motion for a directed verdict in a manner that chinned Rule 33.1's pole. *Id.* at 5, 594 S.W.3d at 150.

In this case, Lambert's oral motion for a directed verdict does not satisfy Rule 33.1 as it has been applied by this court's and the supreme court's cases. His motion was more like the ones in *Conley*, *Cooley*, and *Dixon* than in *Garner*. Because Lambert did not make with enough precision in circuit court the argument that the State failed to prove that he constructively possessed contraband, his argument on appeal was not properly preserved for review.

B.

Next, Lambert argues that the circuit court abused its discretion by preventing defense counsel from cross-examining officer Gibson about the officer's statement at trial that Lambert "just kind of rambled about some other things." Lambert says the error was not harmless "as proof regarding potential other occupants would have weighed heavily against a finding of constructive possession given the contraband was found in [a] communal area of the multiroom residence."

On cross-examination, Lambert's attorney asked officer Gibson, "Did Mr. Lambert tell you about several recent occupants in his home?" The prosecutor objected to this

5

question about other occupants—arguing that it was hearsay admitted on behalf of the defendant. The following colloquy occurred.

| | |
|---|---|
| DEFENSE COUNSEL: | Judge, his testimony specifically was that Mr. Lambert rambled on about several other things, so the State's line of questioning opened the door to this specific question. And by the way, this is the only question I anticipate asking that would call for hearsay. |
| PROSECUTING ATTORNEY: | If somebody wants to utter that statement, it's not this witness that can, because it's hearsay. |
| CIRCUIT COURT: | What is the exception to the hearsay rule? |
| OFFICER GIBSON: | That the State has opened the door in its line of questioning. |
| CIRCUIT COURT: | I'll sustain the objection. |

We hold that Lambert did not preserve this issue for our review because he failed to proffer testimony that Lambert believed he could have elicited from the officer had the circuit court allowed him to do so. Specifically, Lambert did not proffer what officer Gibson would have said had the officer been asked to elucidate the "ramblings" reference or what Gibson would have replied to the question about what Lambert knew about other occupants. Nor is it at all clear enough from the context what officer Gibson meant by the term ramblings. A proffer permits the circuit court to make an informed decision and creates a record on which an appellate court can decide whether there was reversible error in an evidentiary decision. *Sharp v. State*, 2018 Ark. 274, at 5, 555 S.W.3d 878, 881. A proffer would not generally have been required if the record's context clearly enough informed the circuit court and this court on what officer Gibson meant by the cloudy statement. But this

6

record is turbid, not clear, on the challenged denial.  Therefore, a proffer from Lambert was required to preserve Lambert's objection that the circuit court erred when it did not allow him to further question officer Gibson.

On a related point, Lambert also contends that the court unfairly limited his constitutional right to effective cross-examination.  This objection and argument were not made to the circuit court, so the issue is not preserved for review.

## C.

Lambert's final argument is that the circuit court erred by allowing the prosecutor to misstate the law about his parole eligibility to the jury.  Here is what the prosecuting attorney told the jury:

> And I'll be relatively brief because what you guys have here is more or less a math problem that I want to talk to you about.  In the jury instruction, you've got the jury instruction with a bunch of kind of gobbledygook stuff about one-half and one-third and all that. Here's the bottom line I'm going to tell you: that if you give Mr. Lambert a sentence in the department of corrections, he's going to be eligible for parole -- if he behaves himself, he'll be eligible in one-sixth of the time.  So, *the most he's going to walk out of here today with if you give him 30 years is five years.* Now, the legislature made up the range of sentencing. They're the ones that made up the amount of time that people stay down there.  The State gets blamed all the time for letting people out who committed homicides and things like that. Why is a person out for this?  That's up to the parole board and up the individual defendant.  So, the most you can give him *if you give him a 30-year sentence is, if he behaves himself, he's going to stay five years* before he's eligible for parole.

(Emphasis added).

Lambert's attorney objected to the prosecutor's statements:

> Judge, it's an inaccurate statement of the law to say the most he's going to walk out of here with is five years.  That's just inaccurate.  It's up to the parole board and it's not automatic.  That's just not accurate.  Even if he behaves himself, he can still be denied parole.

In response, the circuit court instructed the jury that "final arguments by the attorneys are not to be considered by you as evidence in the case or instructions on the law." Lambert's counsel then presented a closing argument and clarified to the jury that, after five years, the parole board could deny Lambert's transfer for any reason or no reason and "the idea that it's automatically after five years he's released is not accurate." Lambert's counsel also told the jury, "So, don't assume a 30-year sentence is five years. That's not right. It's not accurate."

Lambert now argues that the prosecutor's statement that he would serve only the minimum sentence allowed by law rather than be possibly parole *eligible* caused the jury to issue a maximum sentence when it would not have otherwise done so. We disagree.

During the sentencing phase of the trial, the circuit court correctly instructed the jury on the law related to parole, meritorious good time, and transfer eligibility in harmony with the model jury instructions. *See* Ark. Code Ann. § 16-90-802; AMI Crim. 2d 9401. Lambert did not object to the court's instruction. After Lambert objected to the prosecuting attorney's statement during closing arguments, the court admonished the jury to follow its (correct) instructions and not attorney arguments; defense counsel also clarified the prosecutor's statement on parole eligibility during closing argument. Finally, at no time after the court had admonished the jury on the parole-eligibility issue did Lambert contend that the court failed to sufficiently cure any perceived prejudicial misstatement of the law. Nor did he ask for an additional remedy, such as a mistrial.

## II.

The circuit court's sentencing order is wholly affirmed.

Affirmed.

GRUBER, C.J., and GLADWIN, J., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.