Scott HOWE *v.* STATE of Arkansas

CA CR 00-143                                        39 S.W.3d 467

Court of Appeals of Arkansas
Division I
Opinion delivered February 21, 2001

*Paul N. Ford*, for appellant. ·

*Mark Pryor*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. A jury found appellant, Scott Howe, guilty of possession of a controlled substance (methamphetamine) and simultaneous possession of drugs and fire-arms and sentenced him to twelve years' imprisonment in the Arkansas Department of Correction. In this appeal, Howe raises three points for reversal. He contends that the trial court erred (1) by denying his motion to suppress evidence seized from his person and his vehicle, (2) by sustaining the State's objection to the intro-duction of the affidavit used to obtain the arrest warrant, and (3) by allowing witnesses who had not been disclosed during discovery or introduced to the jury during voir dire to testify. We conclude appellant's first point has merit and reverse and remand for a new trial.

Deputy Jamie Martin of the Greene County Sheriff's Office encountered appellant in the early morning hours of September 8, 1998. According to Martin, he was traveling along County Road 502 when he observed a truck sitting at the intersection of County Road 502 and Highway 34. Martin testified that the truck began rolling backwards and continued to do so for approximately twenty-five feet, then suddenly "squalled tires" and took off in the opposite direction. Martin turned around and stopped the truck for making an improper start.

Upon stopping the truck, Martin asked the driver, Scott Howe, and his passenger, Robert McCord, for identification. Howe provided identification, but his passenger did not and told the officer that his name was Donny Strope. When McCord was unable to provide a Social Security number or birth date, Martin returned to his car to complete a check on Mr. Strope. After discovering outstanding warrants for Mr. Strope, Martin arrested McCord. Deputy Martin then asked Howe for proof of insurance. When Howe could not provide insurance, Martin informed Mr. Howe that the truck had to be impounded pursuant to local policy.

Martin testified that because he was impounding Howe's truck, he felt that he should take Howe home. Although he had no fear for his own safety and did not believe that Howe was armed, Martin asked Howe if he could perform a pat-down search "to make sure that he didn't have anything on him." From Martin's testimony, it does not appear that he informed Howe that he was performing the pat-down to search for weapons, although Martin did state that the pat-down was for his own safety. According to Martin, Howe consented to the search and voluntarily placed his hands on the hood of the police car.

While conducting the search, Martin felt "something like a hard ball" in Howe's left pocket. Martin testified that he did not believe the item was a weapon, but he did ask Howe what the object was. Howe responded that it was piece of gum. Martin thought Howe was being deceptive and did not believe the item was a piece of gum. Martin testified that he then reached into Howe's pocket and recovered a ball of tinfoil. According to Martin, the foil did not resemble the type of foil that is used to package gum. Martin decided to open the foil and found methamphetamine. He then arrested Howe for possession of a controlled substance. A subsequent inventory search of the truck uncovered another bag of methamphetamine and a .38 caliber pistol.

■ For his first point on appeal, Howe argues that the trial court erred in admitting the evidence seized from his person and the vehicle because he was unreasonably searched. On review of a trial court's denial of a motion to suppress, the appellate court makes an independent examination based on the totality of the circumstances, and will reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999). In making that decision, the court reviews the evidence in the light most favorable to the State. *Id.*

There is no dispute in this case about Martin's justification for pulling Howe over for making an improper start. Clearly, Martin had the authority to do so. *See* Ark. Code Ann. § 27-51-104(b)(3) (Supp. 1999) (stating that operating a vehicle in such a manner so as to cause a spinning of the tires is unlawful). *See also Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997) (holding that all that is required for a lawful stop is that the officer have probable cause to

believe that a traffic violation has occurred; whether the defendant is actually guilty of the violation is for a jury or court to decide, and not the officer on the scene). The critical issue is whether Martin had a sufficient basis to conduct the "pat-down" search that is consistent with the Fourth Amendment.

In this case, Martin testified at the suppression hearing that at no time did he believe Howe was armed or dangerous. Nor did Martin place Howe under arrest or have probable cause to arrest him before conducting the pat-down search. Based on this testimony by Martin, the only basis upon which his pat-down search of Howe can be deemed constitutional is if the search was based on consent.

■ Arkansas Rule of Criminal Procedure 11.1 provides, "An officer may conduct searches and make seizures without a search warrant or other color of authority if consent is given to the search or seizure." Howe repeatedly asserts that Martin never feared for his safety or believed that appellant possessed a weapon. We note, however, that probable cause or reasonable suspicion is not necessary for an officer to request consent for a search. *See Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999).

In this case, Howe does not contend that he did not consent to the search or that the consent was the product of duress or coercion. He argues, instead, that he consented only to the pat-down search and not Martin's more intrusive act of reaching into his pockets.

■ Generally, the scope of a search is limited by its expressed object. *Florida v. Jimeno*, 500 U.S. 248 (1991). In *Jimeno*, the United States Supreme Court held that the standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness — what the typical reasonable person would have understood by the exchange between the officer and the suspect. In *Jimeno*, the Court held that once the respondent gave the police officer permission to search his vehicle for drugs, it was objectively reasonable for that officer to believe that such permission extends to opening containers found in the vehicle. Finally, the Court pointed out that a reasonable person might be expected to know that narcotics are generally carried in some form of a container.

■ In the instant case, Martin testified: "I asked him if I could do a pat down just to make sure that he didn't have anything on him." Moreover, Martin repeatedly asserted that he searched appellant as a safety precaution. From the exchange between Martin and Howe, a reasonable person would have believed that Howe was consenting to a pat-down of his outer garments for guns, knives, or other items that could serve as instruments of harm. Based on this determination and Martin's testimony that he asked Mr. Howe for a search only out of his concern for his personal safety, the scope of the search was limited to a pat-down search for weapons.

■ In *Minnesota v. Dickerson*, 508 U.S. 366 (1993), the United States Supreme Court addressed what has been dubbed the "Plain Feel Doctrine" and stated:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Minnesota v. Dickerson, supra* at 375-76. In *Dickerson*, the Court suppressed evidence of the respondent's possession of crack cocaine because it was shown that the arresting officer had to manipulate the object in the pocket of the respondent before determining that it was contraband. This manipulation amounted to an illegal search as the identity of the contraband was not immediately apparent from its contour or mass.

The instant case is analogous to *Dickerson*. Based on consent, Martin was justified in patting the appellant down for weapons and could have recovered any items whose incriminating nature was immediately apparent. Martin's testimony, however, reveals that he was not able to immediately determine the incriminating nature of the item he felt in Howe's pocket. Martin testified that he did not believe Howe when Howe told him the object was a piece of gum. Martin explained his thought process during the search in the following exchange:

PROSECUTOR: Did you have a suspicion as to what it was?

MARTIN: At that time it wasn't gonna be gum. I had suspected that then.

PROSECUTOR: What did you suspect it to be?

MARTIN: I suspected it to be — at that time — just something illegal. His reaction just led me to believe that. He was just sure it was gonna be a piece of gum.

PROSECUTOR: So the fact that you believed he was being deceptive — was that what led you to believe it would be something worth confiscating?

MARTIN: Yes, sir.

■ It appears from Martin's testimony that he had absolutely no idea what the item in Howe's pocket was until he removed it. Martin's statement that he concluded the item might contain methamphetamine after he saw the foil belies the notion that he did not know what the item was before removing it from Howe's pocket. The statement, "I suspected it to be ... just something illegal," is not sufficient to show that the item's incriminating nature was immediately apparent. Completely absent from Martin's testimony is any statement explaining what it was about the object's feel, shape, or contour that lead him to believe that the object was contraband. Because it is clear from the facts that Martin did not know the item's incriminating nature before removing it from Howe's pocket, this search is contrary to the permissible scope outlined in *Dickerson*, and the trial court's determination that the search did not the violate the Fourth Amendment was clearly against the preponderance of the evidence.

Absent the contraband recovered from appellant's pocket, Howe argues that there was no legally justifiable reason to search his truck. The State responds that the vehicle was not searched based upon the items recovered from the search of Howe's person. The State argues that the contraband in the vehicle was found pursuant to an inventory search after the truck was impounded due to Howe's failure to provide proof of insurance.[1] Howe contends that

---

[1] We note that Martin testified that Howe's passenger told him a gun was in the truck sometime prior to arriving at the Sheriff's Department. The State has not argued that the passenger's statement provided a legally justifiable cause to search the vehicle, and we do not consider that argument.

such a search was unconstitutional because the State improperly impounded his vehicle.

Arkansas Code Annotated section 27-22-104(c) (Supp. 1999), provides that if a motor vehicle operator is unable to present proof of insurance coverage the police officer is to issue a notice of noncompliance and *impound the license plate* attached to the vehicle. The officer is also to issue a temporary sticker that is effective for ten days for the operator to attach to the rear of the vehicle for use in lieu of an official license plate. Ark. Code Ann. § 27-22-104(d).

Absent from the statute is any authority to impound the vehicle of an operator who cannot present proof of insurance. The statute only calls for the officer to impound the vehicle's license plate. In fact, the provision requiring the police officer to issue the operator a temporary sticker to use in lieu of an official license plate provides a strong implication that the operator of the vehicle should be allowed to keep the vehicle and has at least ten days to present proof of insurance.

In light of these provisions, we conclude that the officer improperly impounded appellant's vehicle and that his subsequent search of the vehicle was unconstitutional.

Reversed and remanded.

GRIFFEN, J., agrees.

ROBBINS, J., concurs.