## Jimmy GIVENS v. STATE of Arkansas

CA CR 01-104

69 S.W.3d 50

### Court of Appeals of Arkansas
Divisions I and II
Opinion delivered February 20, 2002

*Alvin Schay*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Jimmy Givens, pleaded guilty to the crime of possession of a controlled substance and was sentenced to three years' probation. In accordance with Rule 24.3(b) of the Arkansas Rules of Criminal Procedure, Givens reserved his right to appeal from the trial court's denial of his motion to suppress, and he now argues on appeal that a police officer's search of his person exceeded the permissible scope of a search for weapons. We affirm the court's denial of his motion to suppress.

■ As noted by the United States Supreme Court, according to *Terry v. Ohio*, 392 U.S. 1 (1968), if an officer justifiably believes a person is armed and dangerous, the officer may conduct a patdown search of the person to determine whether he is carrying a weapon. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). The search, however, is strictly limited to a discovery of weapons; if the search exceeds that necessary to determine whether the person is armed, any items seized will be suppressed. *Id.*

■ ■ However, "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Id.* at 375-76. "Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Id.* at 375. "If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object . . . the plain-view doctrine cannot justify its seizure." *Id.* In *Minnesota v. Dickerson*, where the "incriminating character of the object was not immediately apparent" to the officer, the Court held that the officer's further search of the defendant's pocket was invalid. *Id.* at 379.

■ We note that "as a general matter determination of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). However, we "review findings of historical fact only for clear error" and "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.*

At the suppression hearing, Daniel Willey, a police officer with the City of Blytheville, testified that while on patrol, he stopped a car with tinted windows to examine the darkness of the window tinting. Willey observed the occupant of the car, later identified as appellant, moving his arms as if he were hiding something. Believing that appellant was armed, Willey had appellant exit the car and conducted a patdown search of appellant. Willey testified, "When I pat him down I just move my hands down the outer clothing, around the waistband, around the legs, just make sure he hasn't got

a handgun stuck in the side of his pants or within his waist-band. . . .” As he was patting appellant down, appellant jerked away, turning his left side away, preventing Willey from searching appellant's left side. Willey handcuffed appellant and patted down his left pants pocket, discovering a “tubular object” that “felt like a crack pipe.” Willey testified that most crack pipes “are tubular and glass, open on the ends” and that he knew right away that it was a crack pipe. He then reached in appellant's pocket and removed a crack pipe and placed appellant under arrest for possessing the crack pipe. The officer continued his search of appellant, finding cocaine in appellant's pants pocket and in his ski mask.

On cross examination, Willey testified that it was obvious that the object was a crack pipe, but he conceded that it could have been any number of other items. On redirect examination, Willey testified as follows:

> Well, as I felt it, I see a lot of them. The crack pipe was open on the ends. It was short and hard. At that point there was no doubt in my mind that's what he was hiding from me. He was pulling his leg away from me. At that point I did retrieve it. . . . As I rubbed my hand down it was laying sideways in his pocket. As I rubbed my hand down it you could feel the open end on it. On one finger I could feel it. And at that time I went ahead and retrieved it.

As his only point on appeal, appellant argues that the officer's search of his pocket exceeded the permissible scope of a protective search for weapons because the contour or mass of the crack pipe did not make its identity readily apparent to the officer. He argues that “the testimony of the officer that the tubular object in [a]ppellant's left pocket was open at both ends . . . makes it obvious that he had to either remove it from [a]ppellant's pocket and view it, or manipulate it while it was in the pocket, to determine it had open ends.” He further argues that the “round and hard object could have been a pen, a pencil, a spike or any other number of objects.” Thus, he contends that the items seized from appellant must be suppressed.

In this case, the officer testified that he rubbed his hands down appellant's outer clothing, and in doing so he felt an object in appellant's pocket that he knew was a crack pipe. Giving due weight to Willey's testimony that he had seen a lot of crack pipes, that it was obvious that he felt a crack pipe, and that he immediately knew it was a crack pipe, we cannot conclude that the court erred

in refusing to suppress the crack pipe, as the incriminating nature of the object was immediately apparent to Willey.

This case resembles· an earlier case in which we noted an officer's testimony that "based on his experience as a law enforcement officer, it was apparent to him that what he felt in the appellant's pocket was a bag of cocaine." *Dickerson v. State*, 51 Ark. App. 64, 69, 909 S.W.2d 653, 656 (1995). There, we concluded that "the seizure did not invade the appellant's privacy beyond that already authorized by the officer's search for weapons." *Id*. We distinguish the case at bar from a case in which we suppressed items found during an officer's search of a defendant's clothing when it was not "immediately apparent" to the officer that the item he felt was contraband, and he had to remove the item from the defendant's pocket to determine its nature. *Howe v. State*, 72 Ark. App. 466, 39 S.W.3d 467 (2001); *see also Hunter v. State*, 71 Ark. App. 341, 32 S.W.3d 33 (2000) (holding that the search exceeded the permissible scope of a protective search when an officer opened a piece of paper that he had removed from the defendant's waistband).

■ Further, Willey's testimony that he felt the open end of the crack pipe with one finger does not suggest that he did more than examine the "contour" of the object as is permitted by *Minnesota v. Dickerson*. Willey otherwise described the patdown as rubbing his hands down appellant's outer clothing. This testimony does not give rise to a suggestion that Willey manipulated the crack pipe or that the search extended beyond that necessary for a search for weapons. Consequently, we conclude that this case is distinguishable from our decision in another case where we held that because the officer "had to manipulate a bulge in [the defendant's] rear pocket to determine that it was contraband," the search exceeded its permissible scope. *Bell v. State*, 68 Ark. App. 288, 293-94, 7 S.W.3d 343, 346 (1999).

■ Finally, we conclude that, following the seizure of the crack pipe, Willey's continued search of appellant's person and the subsequent seizure of the cocaine was lawful as a search of appellant's person incident to an arrest for possession of the crack pipe. *Chimel v. California*, 395 U.S. 752, 762-63 (1969). Thus, we hold that the trial court did not err in denying appellant's motion to suppress the evidence seized.

Affirmed.

STROUD, C.J., and JENNINGS, VAUGHT, and CRABTREE, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I would reverse and remand for a new trial in this case because *Terry v. Ohio*, 392 U.S. 1 (1968), does not authorize an officer to search a suspect's pockets to retrieve an item that the officer knows is not a weapon. As noted by the majority, the purpose of a *Terry* search is to allow an officer to feel the outer portions of a suspect's clothing to determine if the suspect has any weapons. However, a protective pat-down may not be used as a guise for a general search for evidence of criminal activity. *See id.* Once the officer determines that a suspect does not have any weapons, the protective search must end. *See id.*

Consistent with *Terry*, Arkansas Rule of Criminal Procedure 3.4 provides that:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer . . . may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or other dangerous thing which may be used against the officers or others. *In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.*

(Emphasis added.)

It is true that pursuant to *Minnesota v. Dickerson*, 508 U.S. 366 (1993), a police officer during the course of a protective search may seize nonthreatening contraband if its incriminating character is immediately apparent, as long as the officer's search stays within the bounds marked by *Terry*. However, here, the officer's search exceeded the scope of a *Terry* frisk.

The majority notes that Willey stated that when he felt the object, it was obvious to him, based on his experience and the way the object felt, that the object was a crack pipe. He further testified that he sees "lots of them," and that he did not believe the object was anything else when he retrieved it. However, I disagree that the credibility issue in this case turns on Willey's assertion that he

immediately recognized that the object was a crack pipe. Rather, the credibility issue begins and ends with the reason for the patdown: to protect the officer's safety.

Certainly, if the officer mistakenly thought that object was a weapon and it turned out to be contraband, the plain-feel doctrine would apply and the search would be proper. However, that is not the case here. To the contrary, it is clear that Willey knew the object was not a weapon when he searched appellant's pocket. Nonetheless, the protective search continued, as demonstrated by Willey's testimony. With regard to whether the search at that point was pursuant to arrest or for officer safety, Willey stated:

> At that time it was pretty much, after I found the crack pipe I went ahead and patted him the rest of the way down and all the way down his legs after I found the crack pipe. It is correct that at the time I arrested him for the crack pipe there was no other accompanying felony, possession of drugs or anything of that nature.

Thus, when Willey felt the object in appellant's pockets, he knew that it was not a weapon. Further, he was not in any danger because appellant had been handcuffed. At that point, the officer was authorized to continue with the protective pat-down of appellant's outer clothing and to ask appellant for consent to search his pocket if he believed the object was contraband, but he was not authorized to search appellant's pockets when he knew that the object was not a weapon.

The facts of this case are similar to the facts in *Bell v. State*, 68 Ark. App. 288, 7 S.W.3d 343 (1999). In that case, the officer, while performing a protective frisk, noticed a bulge in the defendant's left rear pants pocket. The officer felt of the bulge, which he stated felt like a plastic bag containing a vegetable-like substance in the pocket. The *Bell* court reversed, noting that 1) it was clear from the officer's testimony that he had to manipulate the bulge in order to determine that it was contraband and 2) that when the initial frisk yielded no weapons, the search should have ended.

The majority attempts to distinguish *Bell* on the ground that the officer had to manipulate the object to determine that it was contraband. It is true that the officer in the instant case was not required to manipulate the object to determine that it was contraband. However, this same nonmaniupulative touch also immediately assured the officer that the object was not a weapon. As in *Bell*, it is precisely because the nonthreatening nature of the object in

appellant's pocket was immediately apparent that the officer should not have retrieved the object.

Therefore, I would reverse this case and remand for a new trial.