STATE of Arkansas *v.* Harold Jerome KELLEY

CR 04-1300 210 S.W.3d 93

Supreme Court of Arkansas
Opinion delivered June 16, 2005

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellant.

*Terrence Cain*, for appellee.

JIM GUNTER, Justice. This is an interlocutory appeal by the State from the Pulaski County Circuit Court's order granting Harold Jerome Kelley's motion to suppress.[1] The State contends that evidence seized during an inventory pursuant to the impoundment of Kelley's car for failure to provide proof of insurance was lawful, and

---

[1] This appeal was brought pursuant to Arkansas Rule of Appellant Procedure — Criminal 3(a), which allows the state to bring an interlocutory appeal to this court when the trial court grants a pretrial motion to suppress seized evidence under Ark. R. Crim. P. 16.2. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(8), governing appeals required by law to be heard by the Supreme Court.

that the circuit court erred in granting Kelley's motion to suppress it. We agree with the circuit court, and affirm its order suppressing the evidence.

These are the relevant facts. While patrolling an area in Southwest Little Rock on October 16, 2003, Little Rock police officers Rusty Rothwell and Aaron Simon saw a black 1998 Dodge Neon run a stop sign. Officer Rothwell followed the car and ran a check on the license plate number. The license check indicated that the car was a 1998 red Dodge Neon, not a black one. Rather than pull the car over, however, the officers followed Kelley and watched him from across the street as Kelley pulled into a gas station and went into the convenience store to make a purchase. After Kelley got back in the car and began to drive away, Officer Rothwell turned on his blue lights, pulled into the gas-station parking lot, and blocked Kelley's exit. Kelley got out of the car and started walking toward a pay phone, when the officers stopped him, explained that they had seen him run a stop sign, and asked for his driver's license, registration, and insurance. Officer Rothwell then conducted a pat-down search and ordered Kelley into the back of the police car. Kelley told Officer Rothwell that his license, registration, and insurance were in the front passenger seat of the car; the officers retrieved them.

Both officers testified at the suppression hearing that, while Kelley's license and registration were valid, the insurance card showed that the policy on the car had lapsed. They stated that, because Kelley was unable to produce proof that the car was insured, they impounded the car and took an inventory pursuant to department policy and a standing order of the District Court for the City of Little Rock. During the inventory, Officer Rothwell discovered a bag of cocaine inside a shoe in a shoebox in the back seat. The officers also found some cash, scales, and a digital calculator. The officers seized these items and placed Kelley under arrest. Kelley was charged with possession of a controlled substance with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia with intent to use. Kelley filed a motion to suppress all of this evidence, which the circuit court granted. The State appeals.

■ Before we turn to the State's arguments, it is important to set forth our standard for reviewing a circuit court's decision to suppress evidence. We conduct a *de novo* review based on the totality of the circumstances. *State v. Harmon*, 353 Ark. 568, 574, 113 S.W.3d 75, 78 (2003). We review the findings of fact for clear

error, giving due weight to inferences drawn by the circuit court, and reverse only if the ruling is clearly erroneous or against the preponderance of the evidence. *State v. Howard*, 341 Ark. 640, 645, 19 S.W.3d 4, 8 (2000). We defer to the superior position of the trial judge to pass upon the credibility of the witnesses. *Davis v. State*, 351 Ark. 406, 411, 94 S.W.3d 892, 894 (2003)(quoting *State v. Osborn*, 263 Ark. 554, 566 S.W.2d 139 (1978)). Finally, in making this determination, we view the evidence in the light most favorable to the appellee. *Howard*, 341 at 645, 19 S.W.3d at 8.

■ There is no argument that the seizure of evidence in this case was conducted pursuant to a warrant. Instead, the State argues that the evidence was properly seized pursuant to an inventory search, which is a well-defined exception to the requirements of probable cause and a search warrant. *Welch v. State*, 330 Ark. 158, 164, 955 S.W.2d 181, 183 (1997). In *South Dakota v. Opperman*, 428 U.S. 364 (1976), the Supreme Court held that police may lawfully conduct a warrantless search of an impounded automobile that is designed to produce an inventory of the vehicle's contents. The government bears the burden of showing that its conduct fell within the bounds of this exception. *United States v. Marshall*, 986 F.2d 1171, 1173 (8th Cir. 1993)(citing *Mincey v. Arizona*, 437 U.S. 385 (1978)).

The State's first point on appeal is that the circuit court erred in interpreting Ark. Code Ann. § 27-22-104 to forbid impoundment of a motor vehicle that lacks proof of valid insurance coverage. The State argues that while the statute does not specifically provide for the impoundment of a motor vehicle that lacks proof of valid insurance, it does not specifically prohibit it. While the circuit court's order does not indicate whether its decision to suppress was based on its interpretation of this statute, the court did specifically request the parties to brief the case of *Howe v. State*, 72 Ark. App. 466, 39 S.W.3d 467 (2001), in which the court of appeals interpreted this statute. In light of the court of appeals' decision on this issue and because it is an issue of first impression for this court, we will address the State's argument.

Ark. Code Ann. § 27-22-104 states in relevant part as follows:

(a)(1) It shall be unlawful for any person to operate a motor vehicle within this state unless the vehicle is covered by a certificate

of self-insurance under the provisions of § 27-19-107, or by an insurance policy issued by an insurance company authorized to do business in this state.

(2) Failure to present proof of insurance coverage at the time of arrest *and* a failure of the vehicle insurance database to show current insurance coverage at the time of the traffic stop creates a rebuttable presumption that the motor vehicle is uninsured.

. . .

(c)(1) If the operator of the motor vehicle is unable to present proof of the vehicle's insurance coverage as required in subsection (a) of this section when requested by a law enforcement officer or if a check of the vehicle insurance database at the time of the traffic stop fails to show current insurance coverage, the operator shall be issued, in addition to any traffic citation issued for a violation of this section, a notice of noncompliance with the provisions of this section on a form to be provided to the Department of Finance and Administration.

(2) The officer shall forward a copy of the notice of noncompliance to the department within ten (10) days of issuance.

(3)(A) In addition, *the officer shall remove and impound the license plate* attached to the vehicle.

(B) The license plate shall be returned to the Office of Driver Services or to the local revenue office.

(d)(1) The law enforcement officer who removes and impounds the license plate pursuant to subdivision (c)(3)(A) of this section shall issue for attachment to the rear of the vehicle a temporary sticker denoting its use in lieu of an official license plate.

(2) The sticker shall bear the date upon which it shall expire in written or stamped numerals or alphabetic characters not less than three inches (3") in height.

(3) This temporary sticker shall only be effective for a period of ten (10) days beginning from the day on which the license plate was taken.

(4) The temporary stickers shall be designed by the department and supplied at no cost to all law enforcement agencies authorized to enforce traffic laws in Arkansas.

(e)(1) Upon receipt of the notice of noncompliance by the department, the department shall proceed to suspend the registration of the uninsured vehicle effective ten (10) days after the license plate was taken and the notice of noncompliance was issued.

(2) However, if the vehicle was insured at the time of the offense, the owner of the vehicle shall have ten (10) days to present proof of insurance coverage or other financial security in effect at the time of the offense, whereupon the license plate shall be returned at no cost to the owner of the vehicle.

Ark. Code Ann. § 27-22-104 (Repl. 2004)(emphasis added).

In *Howe*, the court of appeals held that a search of the defendant's vehicle based on impoundment pursuant to this statute was unconstitutional. *Howe, supra.* The parties in *Howe* agreed that the only basis for the officers' search of the defendant's vehicle was an inventory search pursuant to impoundment for defendant's failure to provide proof of insurance. The court of appeals reasoned that the statute calls for the officer to impound only the vehicle's license plate, not the car, in the event the driver is unable to present proof of insurance. In addition, the court was persuaded that the provision requiring the officer to issue the driver a temporary sticker to use in lieu of a license plate strongly suggested that the operator of the vehicle should be allowed to keep the vehicle and present proof of insurance within ten days. *Id.* at 473, 39 S.W.3d at 472. We agree with the court of appeals.

The State claims that *Howe*'s interpretation of Ark. Code Ann. § 27-22-104 is in conflict with Ark. R. Crim. P. 12.6 and our decision in *Thompson v. State*, 333 Ark. 92, 966 S.W.2d 901 (1998). We disagree. First, Ark. R. Crim. P. 12.6 authorizes an officer to search a vehicle that has been impounded "in consequence of an arrest, or retained in custody for other good cause" to the extent "reasonably necessary for safekeeping of the vehicle and its contents." *Id.* It does not authorize the impoundment, but merely the search after a car has been properly impounded or retained. Without some independent and proper basis for the impoundment itself, the authorization to search pursuant to Ark. R. Crim. P. 12.6 is inapplicable.

Secondly, in *Thompson*, we affirmed the trial court's determination that the officer's decision to impound and inventory Thompson's vehicle was reasonable where Thompson did not

possess a valid driver's license. *Thompson*, 333 Ark. at 96, 966 S.W.2d at 904. We held that the officer acted justifiably when he acted pursuant to a police-department policy and because Thompson was "unable" to drive his car without a valid driver's license. *Id*. at 98, 966 S.W.2d at 905; *see also Benson v. State*, 342 Ark. 684, 30 S.W.3d 731 (2000)(inventory pursuant to impoundment upheld where driver's license suspended). Unlike *Thompson*, the statute in this case specifically sets forth the procedures to follow in the event a driver cannot provide proof of insurance: that is, impounding the vehicle's license plate. Moreover, until the impoundment, inventory search, and consequent arrest, Kelley was not "unable" for any reason to drive his vehicle. We therefore reject the State's claim that *Howe* conflicts with our decision in *Thompson*. We hold that Ark. Code Ann. § 27-22-104 does not authorize law-enforcement officers to impound a vehicle solely for failure of the driver to produce proof of insurance.

The State's next argument is that even if we interpret Ark. Code Ann. § 27-22-104 to forbid the impoundment of motor vehicles for failure of the driver to produce proof of insurance, the officers' conduct in this case was objectively reasonable because they followed the standing order of the Little Rock District Court. The State argues that following a presumptively valid order of a court of competent jurisdiction is, by definition, objectively reasonable police conduct. We reject the State's argument.

■ The relevant statute clearly prescribes the proper procedure to be followed in the event a driver is unable to produce proof of insurance to a law-enforcement officer. It requires the officer to remove and impound the license plate. Ark. Code Ann. § 27-22-104(c)(3). More than two-and-one-half years before the impoundment in this case, the Arkansas Court of Appeals clarified the meaning of the statute to forbid officers from impounding cars for failure of the operator to produce proof of insurance. *See, Howe, supra*. Therefore, we reject the State's claim that the district court's standing order was "presumptively valid" simply because that particular order has not been directly appealed.

■ We have long recognized that every person is presumed to know the law, whether civil or criminal. *Owens v. State*, 354 Ark. 644, 128 S.W.3d 445 (2003); *see also Lawrence v. Lawrence*, 225 Ark. 500, 283 S.W.2d 697 (1955) (in reference to presumed knowledge of longstanding case law). Whether Officer Rothwell,

Officer Simon, or the Little Rock District Court actually knew about Ark. Code Ann. § 27-22-104 and the court of appeals' interpretation thereof, they were presumed to know, and because of this, the officers conduct in contravention of this statute was not "objectively reasonable," as the State contends. It is the duty of those who enforce the law to follow it, and ignorance thereof can no more excuse the conduct of officers and judges than it would excuse the conduct of a defendant. If anything, a higher duty of compliance rests on those whose responsibility it is to enforce the law than on the general populous. *See, e.g., Harris v. State*, 264 Ark. 391, 395, 572 S.W.2d 389, 391 (1978) (holding that the rules of criminal procedure should be common knowledge to law-enforcement and judicial officers who have the duty and responsibility to authorize searches); *Behrel v. State*, 151 Md. App. 64, 823 A.2d 696 (2003); *Porter v. State*, 209 Ga. App. 27, 432 S.E.2d 629 (1993) (holding that police, district attorney, and judge are charged with knowledge of law, particularly when dealing with constitutional rights); *Doctor v. State*, 596 So. 2d. 442 (Fla. 1992) (holding that law-enforcement officers are charged with knowledge of the law and reasonable officer knows statutory legal requirements and procedures).

Finally, the State argues that even if the officers' reliance on the standing order did not constitute objectively reasonable conduct, they relied in good faith on the order and, therefore, the circuit court erred in suppressing the evidence seized in the inventory search incident thereto. We reject the State's argument.

■■ The cardinal principle in search-and-seizure law is that searches conducted without a warrant are *per se* unreasonable under the Fourth Amendment to the United States Constitution. *McDonald v. State,* 354 Ark. 216, 223, 119 S.W.3d 41, 45 (2003)(citing *Flippo v. West Virginia,* 528 U.S. 11 (1999)); *Katz v. United States*, 389 U.S. 347, 357 (1967). There are a few exceptions to this rule, but when the government seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing an exception from the warrant requirement and that its conduct fell within the bounds of the exception. *Mincey v. Arizona*, 437 U.S. 385 (1978). The exception at issue in this case is what has become known as the inventory exception, which allows police to search an impounded automobile if the search is designed to produce an inventory of the vehicle's contents. *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). The purpose of an inventory

search is to protect the owner's property while it remains in police custody, protect the police against claims or disputes over lost or stolen property, and protect the police from potential danger. *Id.* at 369; *Thompson*, 333 Ark. at 97, 966 S.W.2d at 904. The rationale is that police officers can better account for the property if they have an accurate record of what is contained in a vehicle when it is impounded. *Welch v. State*, 330 Ark. 158, 164, 955 S.W.2d 181, 183 (1997).

 In order for a search of a properly detained vehicle to fall within the inventory-search exception, there must be standard operating procedures established by the law-enforcement agency conducting the search. [*Welch v. State*, 330 Ark. 158, 164, 955 S.W.2d 181, 183 (1997) (citations omitted).] The procedures must be followed, and the inventory search must not be conducted solely for investigative purposes. *Id.* In other words, the search must not be "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). The policy or practice governing inventory searches must be designed to produce an inventory. *Id.* Finally, we have held that the police may impound a vehicle and inventory its contents only if the actions are taken in good faith and in accordance with standard police procedures or policies. *Thompson*, 333 Ark. at 97, 966 S.W.2d at 904.

The State contends that the officers relied in good faith upon the standing order and followed police-department procedures in impounding Kelley's car. We note that the standing order authorized impoundment for a violation of Ark. Code Ann. § 27-22-104. To create a rebuttable presumption that a vehicle is uninsured under § 27-22-104(a)(2) requires failure of the operator to present proof of insurance coverage *and* failure of the vehicle insurance database to show current insurance coverage at the time of the traffic stop. While both officers testified at the suppression hearing that the insurance card produced by Kelley was expired, four other witnesses, in addition to Kelley, testified that the car was validly insured.[2]

---

[2] While both officers remember doing a records check on the computer in their patrol car, neither officer remembers what information was obtained regarding the validity of the insurance on Kelley's vehicle.

██ Mr. Fulfer, an employee with the Arkansas Revenue Department, a division of the Arkansas Department of Finance and Administration ("DFA"), testified that the DFA's records showed that the car being driven by Kelley was validly insured on October 16, 2003, the date of the incident, and that he provided this information to the Arkansas Crime Information Center ("ACIC"). The DFA records indicated that the policy was in force from July 23, 2003, through October 21, 2003. Mr. Clinton, an employee at ACIC, testified that, upon request, he provided information on October 16, 2003, to the Little Rock Police Department that the car Kelley was driving was validly insured. This information would have been displayed on the computer in Officer Rothwell and Officer Simon's patrol car. Moreover, both the owner of the vehicle and the insurer testified that the vehicle was validly insured on October 16, 2003. In fact, the insurance agent testified that the only time the car was insured was from July 23, 2003, through October 21, 2003, making Officer Simon's testimony that the card indicated that the insurance was "a couple of days expired" somewhat suspect in light of all of the other testimony. The only insurance card that apparently existed on the car should have shown insurance valid from July 23, 2003, through October 21, 2003. In light of the deference we give to the trial judge in matters of the credibility of witnesses, we cannot say that the circuit court's findings on this issue were clearly erroneous. *Davis v. State*, 351 Ark. 406, 411, 94 S.W.3d 892, 894 (2003).

██ Finally, we note that the purpose of a search pursuant to impoundment is to produce an inventory. *Wells, supra.* Neither Officer Rothwell nor Officer Simon could produce such an inventory in this case. They admitted that they did not write the "inventory" down. The whole purpose of the inventory exception to the warrant requirement is to protect the owner's property while it remains in police custody and to protect the police against claims or disputes over lost or stolen property or, as we stated in *Welch*, to better account for the property by maintaining an accurate record of what is contained in the vehicle when it is impounded. *Welch, supra; Opperman, supra.* Neither Officer Rothwell nor Officer Simon had any record at all of what they discovered in their search of Kelley's vehicle. Having no accurate record of what they discovered in their search, they could not

possibly "account for the property." We reject the State's contention that the officers acted in good faith reliance on the district court's standing order.

For these reasons, we hold that the trial court's order suppressing the evidence seized pursuant to the impoundment and inventory search of Kelley's vehicle was not clearly erroneous. We affirm.