Michael Lee JOHNSON  *v*.  STATE of Arkansas

CA CR 06-775                                    254 S.W.3d 794

Court of Appeals of Arkansas
Opinion delivered April 4, 2007

*Harrelson, Moore & Giles, LLP*, by: *Jeff Harrelson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Lindsey K. Bell*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Michael Lee Johnson was convicted by a jury of possession of methamphetamine with intent to deliver, and was sentenced to ten years in prison. Mr. Johnson raises two arguments on appeal. First, he argues that the trial court erred in denying his motion to suppress contraband because the affidavit in support of the search warrant was flawed. He further argues that his motion to suppress should have been granted because the contraband was obtained as a result of his illegal arrest. We agree with appellant's second argument, and we reverse and remand.

It was established at the suppression hearing that Mr. Johnson is the owner of Big J's Quick Stop convenience store, and an adjacent automobile detail shop, located in Texarkana, Arkansas. Paul Reid Davis testified that he was working as an officer with the Texarkana Police Department on July 29, 2003, when he was conducting a traffic stop near Big J's Quick Stop. During that time, he observed a man named James Washington approach the drive-through window, give the clerk some money, receive a brown paper bag and walk away. After completing the traffic stop, Officer Davis located Mr. Washington and asked him about the bag, which was stapled shut. Mr. Washington permitted Officer Davis

to inspect the bag, which contained a small glass pipe, a Brillo pad, and a lighter. Officer Davis recognized these items as paraphernalia used to smoke crack cocaine.

After consulting with his supervisors and the prosecuting attorney's office on the following day, Officer Davis investigated further by speaking to the clerk at Big J's Quick Stop. According to Officer Davis, the clerk explained that the paper bags were kept under the counter and out of view, and that her manager and the store's owner, appellant Michael Johnson, had both told her that the contents of the bags were used to smoke crack cocaine. As a result of his investigation, Officer Davis swore out an affidavit stating facts that gave him reason to believe that Mr. Johnson had violated Ark. Code Ann. § 5-64-802, which provides:

> (a) Any person who conducts, finances, manages, supervises, directs, or owns any part of an illegal drug paraphernalia business is guilty of a:
>
> > (1) Class A misdemeanor for the first offense;
> >
> > (2) Class D felony for the second offense; and
> >
> > (3) Class C felony for third and subsequent offenses.
>
> (b) A person violates subsection (a) of this section if he or she:
>
> > (1) Conducts, finances, manages, supervises, directs, or owns any part of a business that, in the regular course of business or as a continuing course of conduct, manufactures, sells, stores, possesses, gives away, or furnishes an object designed to be primarily useful as a drug device; and
> >
> > (2) Knows or has reason to know that the design of the object renders it primarily useful as a drug device.

Officer Davis's affidavit stated that he observed thirty or forty brown bags under the counter that had been stapled shut with price tags on them. Officer Davis indicated that the store clerk said she sold many of the brown bags each day. Based on the affidavit, a warrant was issued for Mr. Johnson's arrest.

On August 8, 2003, Officer John Van Meter conducted a traffic stop of Mr. Johnson's vehicle pursuant to the arrest warrant. A woman named Amanda Spencer was driving the vehicle, and

Mr. Johnson was in the front passenger seat. Officer Van Meter received consent to search Ms. Spencer's purse, at which time she informed him that the purse contained baggies of methamphetamine that Mr. Johnson had tossed in her lap and told her to hide. Upon searching the purse, Officer Van Meter found three blue, clear baggies containing methamphetamine, as well as a bag of marijuana and drug paraphernalia. After a canine sniff, the police also found a small amount of marijuana in the console of the vehicle. Officer Davis came to the scene of the traffic stop to assist, and he testified that Mr. Johnson's vehicle had been recently seen leaving his detail shop and that he had made no stops prior to being pulled over.

Officer Nick Elrod testified that he had been investigating Mr. Johnson and conducting surveillance on his detail shop for several months. Officer Elrod interviewed Ms. Spencer at the police station, and she told him that they were at the detail shop before being pulled over, and that she had previously seen Mr. Johnson selling narcotics out of the detail shop.

Officer Elrod further testified that a number of confidential informants had told him that Mr. Johnson had been selling drugs from the detail shop, which was corroborated by a confidential informant working for the sheriff's office. Officer Elrod testified that there had also been a Crime Stoppers call relating the same information. Based on his investigation, Officer Elrod swore out an affidavit to search Mr. Johnson's detail shop, which provided:

> Johnson's detail shop is the far west business in the complex and is believed to be numbered 1510 C E. 9th street. In the County of Miller, State of Arkansas, there is now being concealed and conducted, or possessed namely, methamphetamine, which are being possessed in violation of Arkansas Statute 5-64-401 as amended, and that the facts tending to establish the foregoing grounds for the issuance of a search warrant are as follows: Affiant has been a Police Officer in the State of Arkansas for the past 7 years and is employed by the Texarkana Arkansas Police Department. Affiant is currently assigned to the Bi-State Narcotics Task Force as an Investigator. This Investigator has spoken with numerous people over a period of one month about Johnson's trafficking in narcotics. Deputy Jody Harris advised me that Johnson was selling methamphetamine out of the detail shop. Harris had an informant that worked for Johnson who had personally seen narcotics in the detail shop and had first hand knowledge of Johnson's dealings in narcotics out of the detail shop. I also had a confidential and reliable informant tell me that he

had seen Johnson in the detail shop with narcotics in the past. This informant also told me that Johnson actively deals narcotics out of the detail shop. Our office also received a Crime Stoppers call in reference to Johnson selling methamphetamine out of the detail shop. All of these accounts of Johnson's dealings in narcotics at the detail shop have been received within the past month. Officer Davis has also gone to Big Jake's shop in the parking lot of the detail shop within the past month and made contact with an employee. Officer Davis ascertained that drug paraphernalia was being sold out of this shop for the purposes of smoking crack cocaine. Officer Davis spoke with an employee further and ascertained that the owner Michael Johnson knew that the paraphernalia was being sold for the purposes of using narcotics. This further proved our reasonable suspicions of Johnson selling narcotics out to the detail shop.

On 08-08-03, Officer Davis obtained a warrant for the arrest of Johnson for the selling of drug paraphernalia at his store in the parking lot of 1510 E. 9th. Officers saw Johnson at the detail shop prior to Davis obtaining the warrant. Approximately thirty minutes later, Officer Davis advised officers that he had obtained the warrant. At this point, Officers began to actively look for Johnson and observed him at E. 9th and Broad Street. Officers stopped Johnson's vehicle and made contact with him and the front seat passenger, Amanda Spencer. Officers arrested Johnson on the warrant and then spoke with the passenger, Spencer. Spencer was found to have three baggies of suspected methamphetamine in her purse. Spencer told Officers that Johnson had thrown the baggies of suspected methamphetamine at her when they were getting stopped. According to Spencer, Johnson told her to hide the drugs, because he was going to jail. Spencer told me that they had just left the detail shop approximately seven to ten minutes prior to being stopped. Mr. Johnson also told Inv. Booker that they had just left the detail shop approximately ten minutes to being stopped. With this in mind, and all of the different citizens accounts of Johnson's dealing in narcotics at this detail shop, it is believed that Johnson got the three baggies of suspected methamphetamine from the detail shop. Spencer also told Officers that Johnson was bragging to her that he had $1200.00 dollars worth of methamphetamine that he was needing to sell. This led Officers to believe that more narcotics could possibly be at the detail shop.

This area is high narcotics area. The area has numerous other suspected drug dealers around that would alert other subjects at the

detail shop of our approach if a search was done in the daylight hours. Officers also believe that if the search warrant was delayed until daylight hours, the evidence could very well be destroyed.

Based on Officer Elrod's affidavit, a warrant was issued to search Mr. Johnson's detail shop for methamphetamine and related paraphernalia. The search warrant authorized the search to be conducted at any time, day or night, and the search was executed at 8:20 p.m. on August 8, 2003. During the search, a canine alerted on a black vial being concealed in a floor heater located in the office of the detail shop. Inside the vial were six blue, clear baggies containing methamphetamine. Officer Elrod testified that the baggies looked exactly like those that were seized during the traffic stop. The police also found a number of items indicating Mr. Johnson's control of the office, including a receipt book containing his signatures, two of his business cards, and personal photographs.

Mr. Johnson's first argument on appeal is that his motion to suppress the items found in the office should have been granted because the affidavit for search warrant was defective. Mr. Johnson asserts that the affidavit was insufficient because (1) there was an insufficient factual basis to justify a nighttime search; (2) there was insufficient indicia of reliability of the confidential informants; (3) the affidavit contained a misleading statement; and (4) there was an insufficient time reference as to when criminal activity allegedly occurred.

Rule 13.2(c) of the Arkansas Rules of Criminal Procedure provides:

> Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:
>
> (i) the place to be searched is difficult of speedy access; or
>
> (ii) the objects to be seized are in danger of imminent removal; or
>
> (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is

difficult to predict with accuracy; the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

Mr. Johnson contends that in this case the affidavit contained mere conclusions, as opposed to any factual basis constituting reasonable cause to issue a warrant for a nighttime search under the above rule. He cites *Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003), where our supreme court held that a factual basis supporting a nighttime search is required as a prerequisite to issuance of such a warrant.

Mr. Johnson further asserts that no search warrant was authorized at all because the reliability of the confidential informants referenced in the affidavit was not established. He relies on *Abshure v. State*, 79 Ark. App. 317, 87 S.W.3d 822 (2002), where we stated that a search warrant is flawed if there is no indicia of reliability of the confidential informant. Moreover, Mr. Johnson submits that the affidavit contained a misleading statement in that it did not make clear whether the paper bags containing the suspicious items were being sold from the convenience store or the detail shop. In *Abshure v. State, supra*, we held that a search warrant should be invalidated if a defendant shows by a preponderance of the evidence that the affiant made a false statement knowingly and intelligently or with disregard for the truth, and that, with the false material set to the side, the remaining content is insufficient to establish probable cause. Finally, again relying on *Abshure v. State, supra*, Mr. Johnson challenges the issuance of the search warrant because the affidavit failed to establish a sufficient time frame as to when the criminal activity occurred, other than to say that there had been reports received within the last month that he was dealing drugs from the detail shop. For each of these reasons, Mr. Johnson contends that the search of his detail shop was illegal.

In reviewing a suppression challenge, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). Given the totality of the circumstances of this case, and assuming for purposes of this issue that appellant's arrest was legal, there was probable cause to issue the search warrant. Furthermore, while the affidavit failed to

establish probable cause for a nighttime search, Officer Elrod relied in "good-faith" on the search warrant, having probable cause to believe that a nighttime search was authorized. *See United States v. Leon*, 468 U.S. 897 (1984).

The portion of Officer Elrod's affidavit pertaining to the issuance of a nighttime search provided:

> This area is a high narcotics area. The area has numerous other suspected drug dealers around that would alert other subjects at the detail shop of our approach if a search was done in the daylight hours. Officers also believe that if the search warrant was delayed until daylight hours, the evidence could very well be destroyed.

While this information did not independently provide a factual basis to establish any of the three requirements to justify a nighttime search under Ark. R. Crim. P. 13.2(c), Officer Elrod's testimony at the suppression hearing indicated that a well-trained police officer would have believed there was probable cause to execute the search at night. In this regard, Officer Elrod testified:

> The area around 1510 East Ninth Street, or Big J's Detail Shop, is in an area where we have lot of problems with a known criminal element with guys that live two or three houses behind the detail shop. The detail shop was part of one business of two or three other locations in that same little area that was frequented by the criminal element and drug users. Most of those folks don't want to have contact with me. If they see me coming, they're either gonna run, yell for someone else to run, or tell everybody you're there. It happens all the time.

> I prepared an Affidavit for Search Warrant on August 8, 2003 at 8:00 o'clock, which I recognize. I also recognize the Search Warrant for 1510 East Ninth Street that was signed by Judge Hudson. I believe I had a good warrant and it established probable cause to search 1510 East Ninth Street. The actual time on the warrant would've been sometime after 8:00 o'clock and I know there are different rules for nighttime searches. I believe I established sufficient facts where the judge could make a finding that a nighttime search was warranted.

> I believe that the neighborhood where we were going to be operating, it's a pretty rough neighborhood, and there's no telling

who you're gonna run into, and what they're gonna say to alert other people of your presence, and that becomes dangerous for police officers. It becomes dangerous once people start yelling that the police are coming, people are gonna start flushing narcotics, and you never know what people are gonna do because of their fear of going to jail.

. . . .

When I was in patrol before I was in narcotics, a house directly behind the detail shop was owned by a gentleman that was a bootlegger and who trafficked in guns. A lot of criminal element hung out at his house. One day, when I was attempting to serve a warrant on a man, he fled and ran behind Mr. Johnson's detail shop. By the time I arrested the man, there were approximately 150 people surrounding me. The windows of my patrol car were busted out and we almost had a bad scenario play out. So we have a lot of criminal element condensed in a one or two block area. It doesn't necessarily mean that these guys are going to flush the dope, but that's a high probability if they see us. We also wanted to go in there and meet our objective without meeting a wall of people wanting to bust your windows out and come at you like that. When officers' safety is an issue, we felt like we needed to do it at that time.

The people referred to as "criminal element" are out at all times, but most of them at the house I described behind the detail shop are out during the day time. That particular house was not connected to the investigation of the detail shop, but there were numerous other people in the area that would give us problems if we did [the search] during the day when that area is most busy.

While *United States v. Leon, supra*, involved analysis of probable cause for a search under the Fourth Amendment, and this issue involves consideration of a nighttime search under the Arkansas Rules of Criminal Procedure, our supreme court has adopted and applied the reasoning contained in *Leon* to nighttime searches in Arkansas. *See, e.g., Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999). However, the application of the good-faith exception is not absolute. A police officer may not rely entirely on the magistrate's finding of probable cause; any material false statements or misrepresentations in the police officer's affidavit will deny the State the benefit of the exception to the exclusionary rule. *Crain v.*

*State*, 78 Ark. App. 153, 79 S.W.3d 406 (2002). In our determination of whether or not the good-faith exception applies, we look to the totality of the circumstances and may consider unrecorded testimony given to the magistrate as well as facts known by the officer but not communicated to the magistrate. *Id.* We must decide if it was objectively reasonable for a "well-trained police officer" to conclude that the nighttime search was supported by probable cause. *Anderson v. Creighton*, 483 U.S. 635 (1987).

Considering these principles, we conclude that Officer Elrod's reliance on the search warrant's nighttime provision was objectively reasonable. Officer Elrod's affidavit did not contain any material false statements or misrepresentations, and his testimony established his specific knowledge that the contraband would be in imminent danger of removal if the search were executed during the day, as well as the fact that the warrant could only be safely executed at nighttime. Therefore, under the good-faith exception the nighttime aspect of the search was valid.

We need not rely on the good-faith exception in concluding that, beyond the nighttime provision, the warrant provided probable cause to search the detail shop. Rule 13.1(b) of the Arkansas Rules of Criminal Procedure provides:

> The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place. Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

Mr. Johnson challenges the affidavit in support of the warrant on the basis that the reliability of the informants was not

established. While there were three anonymous informants who gave information within the past month that Mr. Johnson was selling drugs from the detail shop, Mr. Johnson submits that there was no indicia of reliability to support these hearsay allegations. We agree that the veracity of these informants was not established.

Nevertheless, Rule 13.1(b) provides that even where the veracity of an informant is not established, this does not require denial of the application for search warrant if the affidavit viewed as a whole provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place. In this case, in addition to the information obtained through the informants, the affidavit contained Mr. Johnson's admission that he had left the detail shop about ten minutes before his vehicle was stopped, and information that the stop of his vehicle resulted in seizure of baggies of methamphetamine. While Mr. Johnson asserts that there were misleading statements in the affidavit, we disagree. The objectionable language states, "Officer Davis has also gone to Big Jake's Shop in the parking lot of the detail shop within the past month and made contact with an employee. Officer Davis ascertained that drug paraphernalia was being sold out of this shop for the purposes of smoking crack cocaine." These assertions were not misleading in that they did not indicate to the magistrate that paraphernalia was being sold from the detail shop itself. Finally, contrary to Mr. Johnson's contention, the affidavit contained an adequate time reference. The affidavit states that subsequent to Ms. Spencer's arrest, "Spencer also told officers that Johnson was bragging to her that he had $1200.00 worth of methamphetamine that he was needing to sell." Thus, the affidavit contained information indicating that Mr. Johnson was presently dealing methamphetamine. Under the totality of these circumstances, there was probable cause in the affidavit to issue a warrant to search Mr. Johnson's detail shop.

Mr. Johnson's remaining argument is that the trial court erred in denying his motion to suppress the fruits of his illegal arrest. Rule 7.1 of the Arkansas Rules of Criminal Procedure provides, in pertinent part:

(a) A judicial officer may issue an arrest warrant for a person who has failed to appear in response to a summons or citation.

(b) In addition, a judicial officer may issue a warrant for the arrest of a person if, from affidavit, recorded testimony, or other

information, it appears there is reasonable cause to believe an offense has been committed and the person committed it. If the offense is a misdemeanor a summons should issue unless:

(i) the offense, or the manner in which it was committed, involved violence to a person or the risk or threat of imminent serious bodily injury; or

(ii) it appears that the person charged would not respond to a summons.

The warrant for Mr. Johnson's arrest was issued for a misdemeanor violation of owning an illegal drug paraphernalia business. Mr. Johnson argues that a summons, and not a warrant, should have been issued under Rule 7.1(b) because the offense was a misdemeanor, did not involve violence, and there was no reason to believe that he would not respond to a summons. Mr. Johnson further contends that the statement by the store's clerk that Mr. Johnson knew what the brown bags were for, standing alone, did not establish probable cause that he had committed the offense.

We agree that the arrest was illegal. Based on the information obtained by the police, there was reasonable cause to believe that Mr. Johnson had committed the offense of owning an illegal drug paraphernalia business. However, the problem lies in the fact that this was a misdemeanor offense, for which a summons, and not an arrest warrant, should have issued under Rule 7.1(b). While the rule uses the term "should," our court has held that the term "should" is equivalent to the term "must." *See Guest v. San Pedro*, 70 Ark. App. 389, 19 S.W.3d 62 (2000); *see also Little v. State*, 261 Ark. 859, 554 S.W.2d 312 (1977) (where the supreme court stated that "should" and "must" are often synonymous).

While there are two circumstances upon which an arrest warrant should issue for a misdemeanor offense, neither are present here. There was no information tending to show that Mr. Johnson would not respond to a summons. The State contends that subsection (b)(i) is applicable, asserting that there is always the possibility of drugs being linked with harmful events. But be that as it may, the offense of owning a store that sells drug paraphernalia is in itself not a violent offense and does not involve the risk of imminent serious bodily injury, and we cannot agree that this exception to the summons requirement applies.

The State also relies on the good-faith exception, noting that in his testimony Officer Davis stated that he consulted with his supervisor and the prosecuting attorney before obtaining the arrest

warrant. The State is correct that the *Leon* standards can be applied to an arrest-warrant case. *See Stewart v. State*, 289 Ark. 272, 711 S.W.2d 787 (1986). Nonetheless, we hold that the good-faith exception does not apply to these facts. As we have already stated, the affidavit for the arrest warrant itself provided reasonable cause that a misdemeanor had been committed. However, there was no good-faith reliance that an arrest warrant, as opposed to a summons, could be issued for the misdemeanor under either of the Rule 7.1(b) exceptions. Clearly, neither of these exceptions existed and the rule was violated.

In deciding that Officer Davis could not have acted in good faith, we are guided by the language from our supreme court's decision in *State v. Kelley*, 362 Ark. 636, 210 S.W.3d 93 (2005), where the trial court's decision to suppress evidence seized pursuant to an inventory search of the appellee's impounded car was upheld. The supreme court wrote:

> We have long recognized that every person is presumed to know the law, whether civil or criminal. *Owens v. State*, 354 Ark. 644, 128 S.W.3d 445 (2003); *see also Lawrence v. Lawrence*, 225 Ark. 500, 283 S.W.2d 697 (1955) (in reference to presumed knowledge of longstanding case law). Whether Officer Rothwell, Officer Simon, or the Little Rock District Court actually knew about Ark. Code Ann. § 27-22-104 and the court of appeals' interpretation thereof, they were presumed to know, and because of this, the officers conduct in contravention of this statute was not "objectively reasonable," as the State contends. It is the duty of those who enforce the law to follow it, and ignorance thereof can no more excuse the conduct of officers and judges than it would excuse the conduct of a defendant. If anything, a higher duty of compliance rests on those whose responsibility it is to enforce the law than on the general populous. *See, e.g., Harris v. State*, 264 Ark. 391, 395, 572 S.W.2d 389, 391 (1978) (holding that the rules of criminal procedure should be common knowledge to law-enforcement and judicial officers who have the duty and responsibility to authorize searches); *Behrel v. State*, 151 Md. App. 64, 823 A.2d 696 (2003); *Porter v. State*, 209 Ga. App. 27, 432 S.E.2d 629 (1993) (holding that police, district attorney, and judge are charged with knowledge of law, particularly when dealing with constitutional rights); *Doctor v. State*, 596 So. 2d. 442 (Fla. 1992) (holding that law-enforcement officers are charged with knowledge of the law and reasonable officer knows statutory legal requirements and procedures).

*Id.* at 645-66, 210 S.W.3d at 99.

■ On appeal, all presumptions are favorable to the trial court's ruling on the legality of an arrest and the burden of demonstrating error rests on appellant. *Friend v. State*, 315 Ark. 143, 865 S.W.2d 275 (1993). In this case, Mr. Johnson demonstrated that he was illegally arrested. The "fruit of the poisonous tree" doctrine provides that evidence obtained by the exploitation of a primary illegality must be excluded. *See Wong Sun v. United States*, 371 U.S. 471 (1963). The incriminating evidence obtained as a result of the illegal arrest, including the methamphetamine packets found in the purse and Ms. Spencer's statements about appellant's criminal conduct, were the fruit of the poisonous tree. Without this inculpatory evidence there would have been no probable cause to issue the warrant to search Mr. Johnson's detail shop. For these reasons, the trial court erred in denying Mr. Johnson's motion to suppress the contraband.

Reversed and remanded.

GLOVER and HEFFLEY, JJ., agree.